WORRELL, Appellant,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Appellee.

[Cite as *Worrell v. Norfolk & W. Ry. Co.* (1994), 94 Ohio App.3d 133.]

Court of Appeals of Ohio,
Erie County.

No. E–93–04.

Decided March 25, 1994.

134

*Thomas Murray* and *Nancy Ogden,* for appellant.

*Thomas Antonini* and *Julia Smith–Wiley,* for appellee.

SHERCK, Judge.

This is an appeal from a judgment entered on a jury verdict by the Erie County Court of Common Pleas in an action brought by a railway employee against her employer under the Federal Employers' Liability Act ("FELA," Section 51, Title 45, U.S.Code). The jury found the employer was not negligent in the placement of a box which allegedly fell against the employee. Because we find the trial court's comments on the evidence may have prejudiced the jury, we reverse.

Appellant, Karen Worrell, was a long-time clerical worker for appellee, Norfolk and Western Railway, at appellee's Bellevue, Ohio switching yard. On March 25, 1990, appellant was working in the main administration building of that facility when she entered a small records room adjacent to her office. Appellant, according to her later testimony, stood by a file cabinet in the records room. While she was standing there, a sixty-pound box which had been set on the floor tipped over behind her and struck her on the calves of her legs. Appellant stated that this contact made her legs buckle beneath her, causing her to fall to the floor with a twisting motion.

Appellant disclosed the incident to a supervisor, refused medical treatment and finished her shift. However, later that evening, appellant reported that she began to experience neck and lower back pain accompanied by nausea. She was treated that evening at a hospital emergency room. As time progressed, appellant stated, her symptoms persisted and intensified. Following extended treatment, appellant attempted to return to work but in doing so suffered an intensification of her symptoms. Eventually, appellant was advised that she could no longer return to the type of work she had performed at the switchyard.

Appellant then brought her FELA suit, which alleged that appellee, by placing the box which fell on her as it did, breached its statutory duty to provide a safe workplace. Following trial, the jury returned a verdict for appellee. In interrogatories accompanying the verdict, the jury found that appellant had been injured to a degree equivalent to a monetary amount of $224,000. However, the jury also found that no negligence was attributable to either party. The trial court entered judgment on the verdict. Appellant appealed, setting forth the following three assignments of error:

"I. The trial judge's comment, in the presence of the jury, that Mrs. Worrell, because she is not an expert, is not qualified to testify on the basis of her observations why she believed the box toppled against her, constituted reversible error (A) because it erroneously suggested to the jury that the reason why the box toppled was a matter not within the common experience of people and, therefore, required expert testimony; and (B) because such comment by the trial

judge suggested to the jury that, in the absence of expert testimony, the plaintiff had not met her burden of proof on an ultimate issue of fact.

"II.   The trial court committed reversible error by excluding testimony that train traffic all day long on both sides of the building in which Mrs. Worrell was injured caused noticeable vibration therein.

"III.   The court committed reversible error by excluding from the jury the fact that the railroad's supervisor had removed the box from the records room because he recognized that it posed a risk of injury to other railroad employees."

## I

■   We will first discuss appellant's second and third assignments of error, which concern evidentiary rulings.   Questions relating to the admissibility of evidence are within the discretion of the court and, absent an abuse of that discretion, will not be overturned on review.   *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 219, 24 O.O.3d 322, 323, 436 N.E.2d 1008, 1010.   "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."   *Id.*

■   At trial, appellant attempted to establish a cause for the box tipping by questioning appellant's supervisor about vibrations within the building due to rail traffic from the nearby tracks.   The trial court sustained appellee's objections to this line of questioning.   The trial court found the issue of vibrations speculative when there had been no evidence presented to suggest that such vibrations could topple the box which fell on appellant.   Such reasoning does not display an attitude that is unreasonable, arbitrary or unconscionable.   Accordingly, appellant's second assignment of error is not well taken.

■   In analyzing appellant's third assignment of error, we must reach a different conclusion.   At trial, appellant's supervisor testified that following the accident he had moved the problem box to his office.   The supervisor further stated that after having taken the box into his office he and several others from appellee's management conducted experiments on the box in what was characterized as an unsuccessful attempt to get the box to tip over again.   On cross-examination, the trial court sustained appellee's objection when appellant sought to ask the supervisor why he had never returned the box to the records room.   In deposition testimony, the supervisor had stated, "once it fell down I wouldn't put it back in there and risk anybody else."   Appellee argued that this constituted a statement of subsequent remedial measures and should be excluded pursuant to Evid.R. 407.   Appellant maintains that the testimony was not being sought to show remedial measures, but to impeach the supervisor's trial testimony that the box was stable and would need to be bumped or kicked to fall over.

■ Evid.R. 407 provides that evidence of subsequent measures is inadmissible to prove negligence or culpable conduct. The rule, however, does not exclude such evidence when it is offered for other purposes, including impeachment. If a purpose other than to show negligence or culpability is properly advanced, then evidence of subsequent measures, if relevant, should be admitted. See *McFarland v. Bruno Machining Corp.* (1994), 68 Ohio St.3d 305, 307–308, 626 N.E.2d 659, 660–661.

In the instant matter, the remedial measure was the removal of the box from the file room. The supervisor's testimony on this point came into evidence during direct examination. The supervisor also provided extensive descriptions of the experiments he had conducted to assure that the box was safe. Even though the supervisor at trial testified to the safety of the box, during his deposition he stated that the reason he had not returned the box to the file room was to protect other employees from risk. Such testimony undermines the supervisor's testimony that he was satisfied that the box was safe and is, therefore, a legitimate line of questioning for impeachment. Therefore, appellant's questions on this issue were proper and the trial court committed reversible error in excluding them. Accordingly, appellant's third assignment of error is well taken.

## II

■ We will now address appellant's first assignment of error. The box which fell on appellant was approximately three and one-half feet long and two and one-half feet high. It contained large forms on heavy paper stock measuring only slightly smaller than the box. The box sat on an eight-inch base. Appellant appears to theorize that as employees removed forms from the box, the remaining forms were permitted to shift so as to create more weight against one side of the top of the box than the other. This imbalance made the box unstable to the point that imperceptible vibrations caused the box to fall as appellant stood at a nearby filing cabinet. Appellant maintains that common sense dictates that if you have a big heavy box with a narrow base and loose material inside, it is likely to tip over.

Appellant, on direct trial examination, began to propose this theory when the following exchange took place:

"Q. [Appellee's counsel] asked you yesterday whether or not if you see an unsafe condition whether or not your rules suggest that you're supposed to report an unsafe condition. Do you remember that question?

"A. Yeah.

"Q. Why didn't you report that box?

"A. Well, honestly I never used the forms and I guess I never looked close enough to see that it was *creating the uneven weight balance that it was*, which naturally anybody that's going to take a form out of there it's going to create an uneven weight balance, but I never * * * if I had been taking the forms out, I would have been aware of it, but since I wasn't, I guess I * * * I wish I had paid attention to it, but I didn't.

"Q. But you don't remember observing that fact prior to being injured?

"A. No, huh uh, no.

"[Appellee's counsel]: Your Honor, I move to strike the witness' testimony. There's been no evidence of any uneven weight balance.

"[Appellant's counsel]: Your Honor, that's an inference that she's—

"COURT: Well, there's been no testimony about it.

"[Appellant's counsel]: She has just testified, Your Honor, that she observed people removing—

"COURT: Yes.

"[Appellant's counsel]: —the forms from the right side, and I suggest to you that she's entitled, based on that observation, to draw the inference that must have created an uneven weight balance.

"COURT: She's not the expert to answer that.

"[Appellant's counsel]: I would respectfully submit to Your Honor that that is not something that requires expert testimony. That's a matter of common experience.

"COURT: Well, I'm going to say get somebody that knows something about the boxes to testify to it.

"[Appellant's counsel]: Your Honor, I don't know any expert in boxes, I really don't. I have nothing further."

Appellant suggests that the trial judge's comments made in the presence of the jury were improper. Appellant contends that the court's comments implied that the reason for the box's fall was not within the purview of common experience and would have to be proved by expert testimony. Appellant called no expert on this topic, and in closing argument, appellee argued that there was "[a]bsolutely no evidence on this point," because the " * * * box was never tested by any experts * * *."

"In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." *State*

*ex rel. Wise v. Chand* (1970), 21 Ohio St.2d 113, 50 O.O.2d 322, 256 N.E.2d 613, at paragraph three of the syllabus.

It is a long-established tenet that jurors are supposed to be competent in the ordinary and common knowledge of mankind and "peculiarly qualified to determine the experienced connection between cause and effect, and to draw the proper conclusion from the facts before them." *Hartford Protection Ins. Co. v. Harmer* (1853), 2 Ohio St. 452, 457, quoted in 1980 Staff Notes to Evid.R. 702. See, also, *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 49–50, 519 N.E.2d 662, 664–665. Appellant asserts that it is within the common experience of mankind that large objects resting on narrow bases have a propensity to tip over. We agree. Therefore, to the extent that the trial judge's comments may be construed to require expert testimony on this issue, those comments were erroneous.

The issue then becomes whether the court's comments before the jury prejudiced appellant's case. We believe they did. The matter of the falling box is at the very heart of the liability question. If the jury took the court's comments, coupled with appellee's argument that appellant totally failed in her proof, to mean that appellant *must* have called an expert, then appellant was prejudiced. This appears to be what occurred.

An analysis of the jury's completed interrogatories demonstrates the jury's probable misperception. First, in Interrogatory No. 1, the jury found that appellant was injured to an extent, more or less, as argued by appellant's counsel. This can only be viewed as a rejection of appellee's position that appellant faked some or all of her injuries. Next, looking to Interrogatory No. 3, the jury found that appellant was in no way negligent herself. Finally, the jury in Interrogatory No. 2 found that appellee was not negligent. Since the jury had already found that appellant was injured and the injury was not appellant's fault, Interrogatory No. 2 can best be construed as the jury's conclusion that appellant failed to prove a breach of duty. This is exactly the position appellee argued in summation when noting appellant's lack of expert evidence on this topic. Therefore, we conclude that the court's comment on the evidence was prejudicial to appellant. Accordingly, appellant's first assignment of error is well taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Erie County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee pay court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK and MELVIN L. RESNICK, JJ., concur.