AZZANO et al., Appellants,

v.

O'MALLEY–CLEMENTS, Appellee.

[Cite as *Azzano v. O'Malley–Clements* (1998), 126 Ohio App.3d 368.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73754.

Decided Dec. 17, 1998.

*Levey & Gruhin* and *Arthur E. Dombek,* for appellants.

*Mazanec, Raskin & Ryder, Joseph F. Nicholas, Jr.,* and *John T. McLandrich,* for appellee.

---

DYKE, Presiding Judge.

Plaintiffs Paul and Harry Azzano appeal from the judgment of the trial court which awarded them a total of $162 in their action for damages stemming from a motor vehicle collision with defendant Therese O'Malley–Clements. For the reasons set forth below, we reverse and remand for further proceedings.

Plaintiffs alleged that Paul Azzano, a minor, was operating a pickup truck owned by his father, Harry Azzano, and that while stopped at a stop sign, the Azzano vehicle was struck by a vehicle operated by defendant. Plaintiffs claimed that the collision resulted in $522.26 damage to Harry Azzano's vehicle and also caused Paul Azzano to sustain injuries to his back, neck, and head. Defendant admitted that a collision occurred but disputed the claimed damages. The matter proceeded to a jury trial on December 5, 1997.

Paul Azzano testified that on February 28, 1996, he was driving home from work and was stopped at a stop sign at the intersection of Ames Road and Independence Boulevard in Parma Heights. In his rear view mirror, he observed defendant's vehicle approaching and he braced himself for an impact. His vehicle was struck and in turn struck a curb. He stated that his head hit the back window of the pickup truck.

Plaintiffs' evidence also demonstrated that Paul was shaken up following the accident and had a bump on his head. Approximately three days later, Paul went to the emergency room. He was diagnosed as having muscle strain and was given Motrin. After a week, Paul complained of continuing stiffness and was subsequently treated by Wilfredo Paras, M.D. of the Cleveland Therapy Center. Paras diagnosed Paul as having acute muscle strains and ordered a regimen of physical therapy, which continued until April 1996. Plaintiffs claimed a total of $2,900 in medical bills.

Paul also stated that he is a merchandiser for Pepsi Cola, which requires him to lift and stack cases at various stores. He presented evidence that he missed thirty-one days of work as the result of pain, which he attributed to the collision, and was ultimately replaced by his employer.

Plaintiffs also indicated that immediately following the accident, Harry Azzano examined the truck and observed a dent in one of the tire rims. He also stated that he heard a grinding noise when he attempted to drive the car, so he had the vehicle towed. Plaintiffs claimed that the rear portion and the brakes of the

pickup truck were damaged from the collision. They presented an estimated repair bill of $522.26.

Defendant testified that the road conditions were extremely icy. She observed the Azzano vehicle stopped at the stop sign half a block ahead. She assumed that the vehicle would continue on Ames but, as she got closer, she saw that its wheels were spinning on the ice. Due to the road conditions, defendant could not stop and her vehicle struck the Azzano pickup truck. Defendant testified that the pickup truck left the scene a few minutes after the collision.

The defense also presented the testimony of Billy Cox, the chief executive officer of a forensic engineering firm in Houston. Over plaintiffs' objection, Cox testified that, as a result of the collision, the Azzano vehicle experienced a velocity change which is "below the threshold for symptomology." The jury subsequently awarded plaintiffs a total of $162. Plaintiffs now appeal and assign two errors for our review. For the sake of convenience, we shall address the assignments of error out of their predesignated order.

Plaintiffs' second assignment of error states:

"The trial court erred in allowing the defendant's expert to testify and render expert opinions relative to the case at bar, particularly as it relates to the issue of injury."

In this assignment of error, plaintiffs maintain that the trial court erred in permitting defendant to present expert testimony that plaintiffs' vehicle experienced a small velocity change in the collision which was "below the threshold for symptomology."

Pursuant to Evid.R. 104(A), the trial court must make a threshold determination regarding the qualification of a person to be an expert witness, before it permits expert testimony. See *Scott v. Yates* (1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105, 106–107. Admissibility of expert testimony is determined on a case-by-case basis, *State v. Clark* (1995), 101 Ohio App.3d 389, 410, 655 N.E.2d 795, 808, and the trial court is vested with discretion to make this determination, in accordance with the terms of Evid.R. 702. *Id.; Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 159, 10 O.O.3d 332, 334, 383 N.E.2d 564, 566–567; *State v. Nemeth* (1998), 82 Ohio St.3d 202, 207, 694 N.E.2d 1332, 1336.

Evid.R. 702 states:

"A witness may testify as an expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

"(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

"(2) The design of the procedure, test, or experiment reliably implements the theory;

"(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

 Thus, pursuant to this rule, a witness may testify as an expert if the following three conditions are met: (1) he or she is qualified as an expert by virtue of specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (2) the testimony relates to matters beyond the knowledge or experience of lay persons or dispels a common misconception among lay persons; and (3) the testimony is based upon reliable scientific, technical, or other specialized information. *Nichols v. Hanzel* (1996), 110 Ohio App.3d 591, 597, 674 N.E.2d 1237, 1240–1241.

 With regard to the first of these factors, the expert must demonstrate some knowledge on the particular subject superior to that possessed by an ordinary juror. *Scott v. Yates, supra.* The qualification of an expert depends upon the expert's possession of special knowledge that he or she has acquired either by study of recognized authorities on the subject or by practical experience that he or she can impart to the jury which will assist the jury in understanding a pertinent matter. *State Auto Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 160, 65 O.O.2d 374, 379, 304 N.E.2d 891, 897.

 With regard to whether the testimony is beyond the knowledge or experience of lay people or dispels a common misconception among them, the expert witness is not required to be the best witness on the subject, but his or her testimony must assist the trier of fact in the search for the truth. *Alexander v. Mt. Carmel Med. Ctr., supra.* When an issue of fact is within the experience, knowledge, and comprehension of the jury, expert opinion testimony on that issue based upon scientific, technical or other specialized knowledge is unnecessary and inadmissible, since it would not assist the jury to understand evidence or to determine a fact in issue. *Stelma v. Juguilon* (1992), 73 Ohio App.3d 377, 384,

597 N.E.2d 523, 527–528. Jurors are supposed to be competent in the ordinary and common knowledge of mankind and peculiarly qualified to determine the connection between cause and effect, and to draw proper conclusion from facts before them. *Worrell v. Norfolk & W. Ry. Co.* (1994), 94 Ohio App.3d 133, 139, 640 N.E.2d 531, 534.

As to the third factor, whether the testimony is based upon reliable scientific, technical, or other specialized information, we note that under Evid.R. 703:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

In *Henricks v. Front Row Theater* (Dec. 15, 1994), Cuyahoga App. No. 66710, unreported, 1994 WL 706127, this court stated as follows:

■ "The first category consists of facts which the expert has observed, or data which the expert has collected. Giannelli, Ohio Rules of Evidence, Section 703, 115. The second category consists of data admitted into evidence. *Id.* Under this rule, unlike Fed.Evid.R. 703, expert opinions may not be based upon other opinions and may not be based upon hearsay evidence which has not been admitted. See, generally, Giannelli, Ohio Rules of Evidence, Section 703, 115–117. See, also, *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 676–677, 595 N.E.2d 360, 365 (the direct quotation of the opinions or conclusions of other experts is not permitted; and testimony regarding the collective opinion of members of a symposium is not subject to cross-examination and is therefore inadmissible hearsay)."

The Supreme Court has determined that there is compliance with Evid.R. 703 where the expert's opinion is based in whole, or in major part, upon data which the expert has perceived. See *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, syllabus.

Further, Evid.R. 705 provides:

"The expert may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data."

■ Thus, disclosure of facts or data must precede the expert's opinion. Ohio Rules of Evidence, *supra,* Section 705, at 125. See, also, *Smith v. Cincinnati Gas & Elec. Co.* (1991), 75 Ohio App.3d 567, 570, 600 N.E.2d 325, 327–328 (when an expert bases an opinion on facts he or she perceived or data admitted in evidence at the hearing, and the facts or data are identified before the opinion offered, Evid.R. 703 and 705 are satisfied). Accord *Metaullics Sys. Co. L.P. v. Molten Metal Equip. Innovations, Inc.* (1996), 110 Ohio App.3d 367, 377, 674

N.E.2d 418, 424–425 (Karpinski, J., concurring) (expert must disclose the supporting facts before offering an opinion).

 Moreover, the expert's opinion generally is competent only if the expert holds that opinion to a reasonable degree of scientific certainty. *State v. English* (1991), 77 Ohio App.3d 371, 381, 602 N.E.2d 655, 661–662; *State v. Benner* (1988), 40 Ohio St.3d 301, 313, 533 N.E.2d 701, 713–714.

Applying the foregoing, we begin noting that after hearing some brief remarks concerning Cox's background, the trial court stated:

"I understand that he is not a physician. I don't think that he can testify as to what happens to the body in a collision because that involves the musculo-skeletal system of the human body."

Thereafter, Cox testified that he is the chief executive officer of his Houston-based forensic engineering firm. He stated that since 1986, he has performed accident reconstruction and "biomechanical analysis," which he defined as the "forces on the body, how the body responds to those forces." He testified that the area is a hybrid between "engineering and medical" fields. Cox was also a police officer for five years and learned accident investigation. He had taken some engineering courses but did not complete his degree. He did not list any medical training. He stated that he had attended a conference which discussed human tolerance response to acceleration and has reviewed similar data in various journals. Cox also stated that he has done sixty to seventy impact tests in which he measured structural deflection and body acceleration.

In this instance, he stated that the collision was "probably bumper to bumper." He did not examine the cars involved in this collision but testified that he reviewed crash test data for Ford Tempos and Ford Rangers, which he obtained from the Internet, and also reviewed bumper standards issued by the federal government. He also conducted a crash test using a 1990 Chevrolet Lumina and a 1984 Ranger, and he admitted that the instant collision involved a 1993 Ford Tempo and a 1994 Ranger.

Cox testified that, based upon his review of papers which quantify muscle responses at crashes of various speeds, injuries generally occur where the occupants of a vehicle experience a 5.6 m.p.h. change in velocity. The papers were not identified and were not introduced into evidence, however. Cox opined that in this instance, the velocity change was less than five miles per hour. Further, despite the trial court's initial determination that Cox could not testify as to what happens to the body in a collision, Cox stated that, based upon previous crash tests which he had performed, as well as "overwhelming literature," "symptoms don't occur" with this acceleration.

■ Reviewing this testimony within reference to Evid.R. 702, we note as a preliminary matter that no evidence was presented to demonstrate that Cox had ever been qualified to provide expert testimony in court. As to his specialized knowledge, skill, experience, training, or education regarding the subject matter, Cox has no degree in his field. Significantly, Cox has no medical training. It is clear that Cox had experience evaluating crash test information, but the crash tests which he conducted involved vehicles of different years or models than those operated by the parties herein. Cox stated that he obtained general crash test information concerning the types of vehicles from the Internet and federal bumper standards. These documents were not introduced into evidence, howeverer.

Further, Cox admitted that the characteristics of the occupants, including their height, weight, and seating positions, can determine whether an injury will occur, but there was no evidence that he considered plaintiff Paul Azzano's characteristics in this matter. Thus, we believe that while Cox may be qualified to perform accident reconstruction and to evaluate the forces interacting in a collision, he was not properly qualified to opine regarding the likelihood of bodily symptoms resulting from such collision.

■ Considering the next factor, we conclude that jurors are capable of determining whether a plaintiff has sustained injury in a collision when they are presented with information concerning the details of that collision. While expert testimony can be helpful, it is not required. Rather, the jurors, as determiners of credibility, must decide whether an injury claim is genuine. Moreover, Cox's testimony was premised upon his claim that the accident was "probably bumper to bumper."

■ Next, it is unclear to us whether Cox's testimony was based in whole or major part upon his own observations, rather than the conclusions of others or other hearsay. Indeed, Cox testified that there is "overwhelming literature" indicating that symptoms of injury would not occur under the acceleration he calculated in this matter, but literature was not subject to cross-examination and supporting data were not identified or introduced.

Considering all of the foregoing, we must conclude that in this case, the trial court's decision to admit the expert's testimony was an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 481–482, 450 N.E.2d 1140, 1141. Accord *State v. Williams* (1992), 80 Ohio App.3d 648, 610 N.E.2d 545 (trial court was not obliged to accept defendant's witness, who was self-professed "forensic scientist and toxicologist," as expert on weapon/wound analysis, even though witness maintained that he had once attended seminar on "stabbing wounds," had taught introductory college courses on "criminalistics,"

and had previously testified at least twice in respect to body wounds; witness had no actual medical training and had never attended an autopsy).

The second assignment of error is well taken.

Plaintiffs' first assignment of error states:

"The trial court erred in instructing the jury that the plaintiff must prove his damages with certainty."

In light of our determination that the second assignment of error is well taken, this claim is moot and will not be addressed herein. App.R. 12(A)(1)(c).

Reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and caused remanded.*

KARPINSKI and ROCCO, JJ., concur.