JOURNAL ENTRY AND OPINION
This is an appeal from a jury verdict, following a medical malpractice trial before Judge Thomas O. Matia, finding in favor of appellees Mark Allen, M.D. and Center for Comprehensive Pain Care, Inc., (CCPC) on the negligence, lack of informed consent and loss of consortium claims of appellants Marilyn and William Harmon. The Harmons claim it was error to permit the testimony of a defense expert based upon facts that were not in evidence or perceived by him. We affirm.
Mrs. Harmon, born October 12, 1937, had suffered from chronic neck pain since a fall in the 1970's. A 1988 spinal fusion of the C-4/C-5 and C-6/C-7 vertebrae resulted in strong and persistent pain in her neck, head, lower face and jaw and, in an effort to alleviate this discomfort, she sought pain management treatment with the physicians of CCPC. Beginning in 1994 she received a series of epidural nerve block injections, then a regimen of facet joint/trigger point injections[1]
outside of the spinal cord by Dr. Edgar Ross and, when he left the group in mid-1997, Mrs. Harmon came under the care of Dr. Allen.
Because the facet joint injections were becoming less effective and more frequent and Mrs. Harmon was taking two strong narcotic medications, Dr. Allen obtained the results of a CT scan and suggested a C-3 epidural nerve root block on her C-3 dermatome in September of 1997. On October 15, 1997, while performing the procedure on Ms. Harmon at Meridia Southpointe Hospital, Dr. Allen inadvertently advanced a catheter into the subarachnoid and punctured the dura, the membrane that confines the spinal fluid within the spinal cord.[2] Because the leakage of spinal fluid sometimes results in severe headaches, before completing the C-3 nerve root block, Dr. Allen performed a prophylactic epidural blood patch. He drew blood from Mrs. Harmon's arm and injected it into the dura to act as a patch of the hole created by the needle and prevent the leakage of spinal fluid. The procedure is termed prophylactic because it is done before headache symptoms occur in an attempt to prevent them.
As she awakened from the general anesthesia, Mrs. Harmon noticed progressive numbness and then paralysis of her legs and left arm. Dr. Allen called in Dr. Dale Braun, a neurosurgeon, for consultation and, after an MRI, they decided she required further surgery; Dr. Braun removed a large blood clot extending between the T-2 to T-8 thoracic vertebrae from Mrs. Harmon's spinal cord that had caused cord compression and the resulting paralysis. Although she regained the ability to walk, Mrs. Harmon has significant residual weakness in her legs and complete numbness in her left hand due to the condition caused by the pressure of the clot on her spinal cord.
Mrs. Harmon and her husband filed suit against Dr. Allen and his two corporate employers, New Pointes Anesthesia Pain, Inc. and CCPC.[3]
At trial, they asserted:
 1. Medical malpractice, because Dr. Allen had negligently introduced blood into Mrs. Harmon's spine that eventually became the blood clot, and also never received informed consent from her to perform the series of procedures that he ultimately did;
 2. Alteration of Dr. Allen's operative notes and the possible disappearance of the consent form that Mrs. Harmon signed on the day of her surgery;
 3. A loss of consortium claim on behalf of Mr. Harmon; and,
 4. A claim for punitive damages based upon the above claims.
At trial, the Harmons presented the testimony of Dr. David Brandon,[4]
an anesthesiologist, who claimed that Dr. Allen breached the standard of care in performing the procedure in the following ways:
 1. He unnecessarily performed the epidural blood patch before the onset of any symptoms;
 2. He performed the blood patch on a patient under general anaesthetic, and the procedure is best performed on an awake patient who can register immediate feedback of pain or pressure while blood is being injected into the dura;
 3. He performed the C-3 nerve root block incorrectly and should have approached the nerve root from a different angle; and,
 4. Using 10 cc's of blood to perform the blood patch was excessive, and caused the blood clot that ultimately resulted in Mrs. Harmon's permanent injuries.
He conceded, however, that the clot could have resulted from an epidural vein bleed, a recognized complication of an epidural block.
Mrs. Harmon testified she had never approved an epidural nerve block and thought that she was receiving a mere facet-joint injection. In addition, the Harmons asserted that Dr. Allen had dictated in his operative notes that he had used 10 cc's of blood in performing the blood patch but, after Mrs. Harmon had experienced problems and the clot was discovered, in anticipation of a lawsuit he later altered the record in handwriting to reflect that only 6 cc's of blood had been used.
Dr. Allen countered with the testimony of Dr. Lorne Eltherington who opined that, from the depositions of the parties, the medical records, and based on his own medical expertise as a pain management specialist, Dr. Allen had met the standard of care in all respects. He stated that prophylactic blood patches are appropriate in some cases, including that of Mrs. Harmon, that performing the procedure on a generally anesthetized patient was proper, that Mrs. Harmon had been apprised of all the risks of the procedure, and that an acceptable amount of blood was used for the blood patch, whether 10 cc's or 6 cc's.
Dr. Allen testified that he had nothing to do with the fact that the October 15, 1997 consent form had been lost, and that he had simply corrected an inaccuracy in the operative notes within days of the procedure when he crossed out 10 cc's on the typed form and wrote in 6 cc's to reflect the true amount of blood used. Further, he asserted that the blood clot resulted from a lacerated vein in the spinal cord, a known and accepted risk associated with the insertion of needles into the cord.
A unanimous jury verdict found in favor of the Dr. Allen and CCPC.
The Harmons' sole assignment of error states:
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF PLAINTIFFS, IN ADMITTING THE TESTIMONY OF DEFENDANTS' EXPERT, DR. LORNE ELTHERINGTON, BECAUSE DR. ELTHERINGTON'S TESTIMONY WAS IMPERMISSIBLY BASED UPON FACTS NOT ADMITTED INTO EVIDENCE OR PERCEIVED BY HIM IN VIOLATION OF EVIDENCE RULE 703.
In his written report, Dr. Eltherington had outlined his opinions and, in the second-last paragraph he stated:
 Finally, I think with Dr. Allen's education and experience having pain management boards and having been trained at least in part I'm sure by Dr. Waldman in Kansas, who is a real authority in the field of pain management, suggest that what he did was, in my mind at least, with reasonable medical probability, within the standard of care * * *.
The Harmons assert that Dr. Eltherington's medical opinions, expressed both in his report and at trial, were impermissibly based upon a belief that, because Dr. Allen was trained by a colleague whom Dr. Eltherington greatly respects, Dr. Allen's treatment of Mrs. Harmon must have conformed to the recognized standard of care. We disagree.
According to Evid.R. 703, [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted into evidence at the hearing. This evidentiary principle has been refined and interpreted by Ohio courts to mean that the requirements of Evid.R. 703 are met if an expert's opinion is based in whole, or in major part, upon data which he has perceived and which has been admitted into evidence in the case.[5]
While the Harmons suggest that, under Azzano v. O'Malley-Clements,[6]
where the background and almost entire testimony of the purported expert was an issue, Dr. Eltherington's testimony was fatally tainted by hearsay and the reputation evidence of a non-party, we do not find that case to be applicable.
A review of the testimony reveals that Dr. Eltherington had based his opinion that the C-3 nerve root block and prophylactic blood patch was medically indicated, authorized by Mrs. Harmon, correctly performed on her while she was sedated using a suitable amount of blood (whether 10 cc's, and not 6 cc's, were used), and that the blood clot and ensuing problems were caused by a bleeding epidural vein and not through any professional lapse by Dr. Allen, on a review of the medical records presented during trial and entered into evidence, and his own extensive professional knowledge of the procedures involved.[7]
The decision of a judge to allow the admission of the expert testimony is reviewed under an abuse of discretion standard.[8] To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.[9]
Given the unquestionable fact that, at trial, the foundation of Dr. Eltherington's opinions and testimony were Mrs. Harmon's medical records and medical history, in combination with his own base of knowledge about the propriety of the medical procedures employed, we must conclude that his testimony was based much more than in major part on evidence he perceived and which was admitted into evidence. We find no prejudice requiring reversal, even given Dr. Eltherington's reference to the training experiences of Dr. Allen, and the expertise of Dr. Waldman. In light of the totality of his testimony in this case, his reference to these factors as a basis for his opinions is parenthetical at best. The assignment of error is overruled.
Based upon our decision on the Harmons' appeal, we decline to address either the propriety or correctness of any asserted cross-assignment of error.[10]
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH ROCO, P.J. and JAMES J. SWEENEY, J., CONCUR.
[1] This is an attempt to use local anesthetics to temporarily dull response from specific nerves.
[2] The risk of an inadvertent dural puncture was recognized by all parties to be part of the risk of an epidural nerve root block, and its occurrence did not in any way place the actions of Dr. Allen outside the medical standard of care required for such a procedure.
[3] All claims against New Pointes Anesthesia Pain, Inc. were dismissed without prejudice, leaving the remaining defendants at trial.
[4] Dr. Brandon admitted that he spent 15% of his professional time providing pain management treatments.
[5] See State v. Solomon (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, syllabus; followed by Azzano v. O'Malley-Clements (1998),126 Ohio App.3d 368, 710 N.E.2d 373 (8th Dist.); Caputo v. Silver Arrow Systems, (Oct. 30, 1997), Cuyahoga App. No. 72620, unreported; Marino v. Scolnick, (Apr. 13, 1995), Cuyahoga App. No. 67495, unreported.
[6] Supra (1999), 126 Ohio App.3d 368, 710 N.E.2d 373.
[7] Dr. Eltherington was one of the founders of pain management as a nationally recognized medical specialty, has taught pain management techniques both abroad and at Stanford University, and continues to operate a pain treatment clinic in California. As such, there is no question that he qualifies as one eligible to give expert testimony on these topics (and no error has been assigned on this point). See Evid.R. 702, dealing with the qualifications of experts.
[8] Scott v. Yates (1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105,107.
[9] Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256,662 N.E.2d 1, 3-4 (1996).
[10] See App.R. 12(A)(1)(c). Although Allen did not file a notice of appeal in connection with these proceedings, he asserted three assignments of error dealing with interlocutory orders of the trial court, to be considered, in his view, if the Harmons' assignment of error was found to have merit.