OPINION
{¶ 1} Plaintiffs-appellants Sherry and Clyde Compher appeal from the April 26, 2004, Judgment Entry of the Guernsey County Court of Common Pleas entering judgment in favor of plaintiff-appellant Sherry Compher and against defendant-appellee The Kroger Company in the amount of $5,000.00.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On Friday, August 15, 1997, appellant Sherry Compher [hereinafter "appellant"] stopped at the Kroger store on the way home from work to pick up a few groceries. As she was checking what kind of meat the store had, a sign came down off the wall and hit appellant on the head. Appellant "had a bump on [her] head, which it was raising up, . . ." Transcript at 12.
 {¶ 3} Appellant later drove home from the store, although she did not remember doing so. The first thing appellant remembered was her husband waking her up on the bed. At the time, appellant had a bump on the top of her head "about the size of a goose egg" and a "horrible headache." Transcript at 13. Appellant ended up spending the weekend in bed due to her headache.
 {¶ 4} Appellant went to work on Monday at the Area Agency on Aging, but felt tired and had headaches all day. Appellant subsequently submitted to X-rays, an MRI and CAT scans and was off work for weeks. In addition to headaches and fatigue, appellant suffered memory loss, her fingernails and hair stopped growing, she was bloated, and she had trouble sleeping. Appellant also suffered from joint and muscle pain and weight gain.
 {¶ 5} After seeing a series of doctors, appellant was diagnosed by endocrinologists with a permanent pituitary dysfunction that prevented her from producing human growth hormone in sufficient quantities. Appellant's doctors opined that appellant's permanent growth hormone deficiency was caused by the incident at the Kroger store, which caused blunt trauma to her head. As a result of her deficiency, appellant requires daily growth hormone injections and will require such for the rest of her life.
 {¶ 6} Thereafter, on October 23, 2002, appellant and her husband filed a personal injury complaint against appellee The Kroger Company in the Guernsey County Court of Common Pleas. The parties filed a joint stipulation on March 17, 2004, stipulating as to negligence. Pursuant to an order filed on April 4, 2003, the trial court scheduled a trial for April 20, 2004, and ordered that all pretrial motions, including motions in limine, be filed on or before fourteen (14) days prior to trial.
 {¶ 7} On April 16, 2004, appellants filed a Motion in Limine, seeking to exclude the testimony of John Wiechel, Ph.D., a biomechanical engineer, from trial. Appellants, in their motion, alleged that Dr. Wiechel, as an engineer rather than a medical doctor, was unqualified to render an opinion as to whether appellant sustained a significant injury. Appellants further contended that Dr. Wiechel's testimony should be excluded since his opinions were based on hearsay "contained in a study performed by others that has not gained the necessary acceptance and reliability required by the courts of Ohio." Appellants specifically argued that Dr. Wiechel had relied on Head Injury Criteria ["HIC"] studies that were not admitted into evidence.
 {¶ 8} In response to appellants' motion, appellee, on April 19, 2004, filed a Memorandum Contra the Motion in Limine, arguing, in part, that such motion should be denied because Dr. Wiechel's testimony was not offered as a medical doctor, but rather as a biomechanical engineer, and also because appellants' "limited examination during a discovery deposition did not delve into Dr. Wiechel's qualifications and methodology as The Kroger Company will do at trial." Appellee further maintained that appellants' motion should be denied since it was not timely filed. Pursuant to an Entry filed on April 19, 2004, the trial court denied such motion "[f]or the reasons stated in the Memorandum Contra . . ."
 {¶ 9} A jury trial then commenced on April 20, 2004. After appellants rested, appellants renewed their Motion in Limine with respect to Dr. Wiechel's testimony. Appellants again argued that Dr. Wiechel's opinion was based on hearsay since he reviewed and relied on The Head Injury Criteria studies in formulating his opinion and such studies were not in evidence. Appellants further argued that Dr. Wiechel was not a medical doctor and, therefore, should not be permitted to testify as to what effects the falling sign had on appellant. The trial court, however, again overruled the Motion in Limine stating, in relevant part, as follows:
 {¶ 10} "THE COURT: All right. The Court finds in that Evidence Rule 703 provides a basis of opinion of testimony by experts that the facts or data in a particular case upon which an expert bases his opinion or inference may be those perceived by him or admitted into evidence at the hearing.
 {¶ 11} "The Court finds that the argument before the Court is whether a study called the HICs study can or cannot be used as a basis for the expert opinion. The Court finds that the expert can use studies to base an opinion upon. It is very similar to a medical doctor using what has been called the BOLT Standard Test and Study . . . and then explain it. However, the expert witness must state that his opinion is based upon facts perceived by him that are in evidence in this case. How force relates to the human body would appear to be within the expertise of Dr. Wiechel as he has stated that he is a biomechanical engineer.
 {¶ 12} "The Court further finds that the matter as to what is or what are the facts which the expert is basing his opinion is subject to cross-examination. Dr. Wiechel's opinions must be based within a reasonable degree of scientific certainty. He will not be permitted to testify as to medical testimony as he is not a doctor.
 {¶ 13} "If he testified that he can, based on his background, training, expertise, study of the facts in this case, offer an opinion as to whether, biomechanically, injury could occur from the force of the letter C falling on the head of Sherry Compher. That appears to be within his expertise. The Court does not find this is a matter that is subject to motion in limine. Motion in limine, therefore, is denied." Transcript at 310-312. Dr. Wiechel was thus permitted to testify. The following testimony was adduced at trial.
 {¶ 14} Dr. Wiechel is a mechanical and biomechanical engineer who analyzes accidents and who, through Ohio State University, does research in "emergency causation and exactly what kind of forces are necessary to cause injuries in different situations." Transcript at 324-325. He has a bachelor's, master's and doctorate degree in mechanical engineering and is a licensed professional engineer. Since working with SEA, Inc., an engineering, fire and chemical and environmental analysis firm, Dr. Wiechel has performed approximately 2,000 biomechanical analyses dealing with injury causation and has published articles on how force relates to injury. Since receiving his Ph.D., he has attended between 50 and 75 conferences "where injury and the mechanical causes of injury are addressed" and has read approximately 1,000 papers on injury causation. Transcript at 342.
 {¶ 15} At the trial, Dr. Wiechel testified that Head Injury Criteria ("HIC") Study, which has been around for approximately 40 years and is the "world standard" on head injury and on identifying the onset of head injury, is part of his training and experience as a biomechanical engineer. Transcript at 371. According to Dr. Wiechel, "the best way of looking at HIC is it's an average acceleration, and there have been a number of studies done over the years in determining where injury occurs with head impact and what kind of HIC occurs with those instances." Transcript at 369.
 {¶ 16} After being retained by appellee Kroger, Dr. Wiechel reviewed an incident report, a couple of statements, appellant's medical records and appellant's deposition testimony. He also went to the Kroger store and took some measurements of the scene where the incident occurred as well as photographs of the store. Such measurements included the height of the letters off the floor (110 inches) and the location of the meat case. Dr. Wiechel also obtained the specific letter "C" that was involved as well as a comparison letter "C". As part of his experiment, Dr. Wiechel took the comparison "C" and dropped it on "a test subject concurrent with measuring the accelerations of that test subjects head." Transcript at 348. The test subject was Dr. Wiechel himself. The acceleration of the letter was measured by putting a bite plate into Dr. Wiechel's mouth with three accelerometers attached to the same and measuring the acceleration on his head.
 {¶ 17} Based on appellant's medical records, Dr. Wiechel knew that appellant was 5'3" (63") tall. Since appellant was bent over the meat counter when the accident occurred, Dr. Wiechel calculated the top of her head at 61-1/2 to 62 inches and calculated the "height to the letter then above her head at about four feet, about 48 inches." Transcript at 353. Based upon the above, during Dr. Wiechel's experiment, the letter was dropped 48 inches onto Dr. Wiechel's head. While Dr. Wiechel is 8 inches taller than appellant, he indicated that the difference in height did not make a significant difference from an engineering standpoint because the letter was going to have the same velocity regardless of height.
 {¶ 18} On the basis of the above experiment, Dr. Wiechel was able, within a reasonable degree of engineering certainty, to measure the forces. Dr. Wiechel opined that, based upon a reasonable degree of scientific certainty, the accelerations and forces present when the letter fell on appellant did not reach the level where injury occurs. Based on the HIC alone, Dr. Wiechel opined that the probability of injury in this case would be extremely small.
 {¶ 19} The videotaped deposition of Dr. Leslie Friedman, one of appellee's experts, had been taken on April 15, 2004, for use at trial. During such deposition, appellants' counsel did not make any objections. After, at trial, the trial court ruled on the objections that were raised by appellee's counsel, appellants subsequently requested that the videotape deposition of Dr. Friedman be stricken in its entirety. Appellants specifically argued that Dr. Friedman's opinions were hearsay since they were based on appellant's medical history, which was taken by a medical assistant rather than the doctor himself and which was not in evidence. The trial court, in overruling appellant's motion to strike Dr. Friedman's videotape deposition, stated, in relevant part, as follows:
 {¶ 20} "The Court now returns to the motion of the Plaintiffs. Motion of Plaintiffs is to strike the deposition of Dr. Leslie Friedman. This matter can be dealt with in two forms: First, the procedural form, and second, the evidentiary form. The procedural form, a motion to strike a full deposition, is the same as a motion in liminie to limit the testimony only in this case.
 {¶ 21} "Plaintiffs are requesting it be limited in its entirety based in part regarding the doctor relied on notes taken by others which he apparently read, and there is allegations misread. The rules of evidence that are cited, 701, 702, 703, 705.
 {¶ 22} "The Court further finds that these motions in limine, in accordance with this Court's scheduling order, and the court rules are to be filed with the Court 14 days before trial. This is the second of these matters to come before the Court outside of that time frame and could be denied procedurally on that basis alone.
 {¶ 23} "The Court finds the appropriate procedure for raising such objections is within the depositions themselves, at which time in a matter that may be corrected could be corrected on the record. Such objections were not specifically raised, and the Court has ruled on all objections within the deposition.
 {¶ 24} "The Court also can deal with this on an evidentiary basis. 803.4 and 803.6 appear to permit the doctors to rely on the notes of others. 803.4 is for treatment, and there is an argument that this is not for treatment, but is for testimony in a court case of an independent medical examination. 803.6 allows those who have a certain business to rely on business records exception.
 {¶ 25} "For those reasons, the Court does not find that this is subject to a motion in limine, and the motion is denied. The Court, however, finds that the information is such that if the data, under 705, a doctor or any other expert witness relies on is incorrect, it is subject for cross-examination and may be exposed in that manner, therefore motion in limine or to strike the deposition of Dr. Leslie Friedman on behalf of Plaintiffs is denied." Transcript at 492-493.
 {¶ 26} Thereafter, the jury, on April 23, 2004, returned with a verdict in favor of appellant and against appellee Kroger in the amount of $5,000.00. The jury, however, declined to award appellant's husband any damages for his loss of consortium claim. The jury's verdict was memorialized in a Judgment Entry filed on April 26, 2004.
 {¶ 27} It is from the trial court's April 26, 2004, Judgment Entry that appellants now appeal, raising the following assignments of error:
 {¶ 28} "I. The trial court erred by denying plaintiffs-appellants' motion to prohibit Mr. Wiechel's testimony as a matter of law.
 {¶ 29} "II. The trial court erred by denying plaintiffs-appellants' motion to prohibit dr. friedman's testimony as a matter of law."
 I {¶ 30} Appellants, in their first assignment of error, argue that the trial court erred in overruling their Motion in Limine with respect to Dr. Wiechel and in permitting Dr. Wiechel to testify at trial. We disagree.
 {¶ 31} Evid.R. 104(A) provides that "[p]reliminary questions concerning the qualification of a person to be a witness . . . shall be determined by the court. . . ." The admissibility of expert testimony is made on a case-by-case basis. State v. Clark (1995), 101 Ohio App.3d 389,410, 643 N.E.2d 105. The trial court is vested with broad discretion in its determination of the competency of an expert witness, and the court's ruling on this matter will not be reversed absent an abuse of that discretion. Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155,157, 383 N.E.2d 564, 565, citing Ohio Turnpike Comm. v. Ellis (1955),164 Ohio St. 377, 131 N.E.2d 397, paragraph eight of the syllabus. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1141.
 {¶ 32} Evid.R. 702 states as follows:
 {¶ 33} "A witness may testify as an expert if all of the following apply:
 {¶ 34} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 35} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 36} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 37} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 38} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 39} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 40} The qualification of an expert depends upon the expert's possession of special knowledge that he or she has acquired either by study of recognized authorities on the subject or by practical experience that he or she can impart to the jury and that will assist the jury in understanding a pertinent matter. State Auto Mut. Ins. Co. v. ChryslerCorp. (1973), 36 Ohio St.2d 151, 160, 304 N.E.2d 891, 897. Furthermore, it must appear that the expert has an opinion of his or her own or is able to form one upon the matter in question. Id.
 {¶ 41} In order to qualify as an expert, the witness need not be the best witness on the subject. Scott v. Yates, 71 Ohio St.3d 219, 221,1994-Ohio-462, 643 N.E.2d 105, citing Alexander v. Mt. Carmel MedicalCenter (1978), 56 Ohio St.2d 155 at 159, 383 N.E.2d 564. The expert must only demonstrate some knowledge on a particular subject which is superior to that an ordinary juror possesses. Id., citing State Farm MutualInsurance Company v. Chrysler Corporation (1973), 36 Ohio St.2d 151 at 160, 304 N.E.2d 891.
 {¶ 42} Pursuant to Evid. R. 703, "[t]he facts or data in the particular case upon which an expert based an opinion or inference may be those perceived by him or admitted in evidence at the hearing."
 {¶ 43} Appellants, in their first assignment of error, argue, in part, that Dr. Wiechel should not have been permitted to give an opinion as to injury since he is not a medical doctor. We concur with appellee, however, that the fact that Dr. Wiechel is not a medical doctor is irrelevant.
 {¶ 44} In Lee v. Mendel (Aug. 24, 1999), Franklin App. No. 98AP-1404, 1999 WL 638645, one of the appellants was injured in several automobile accidents and the case proceeded to trial. After the jury returned with a verdict and awarded a nominal amount of damages, the appellants appealed, arguing, in part, that the trial court had erred in allowing Dr. Wiechel to testify at trial as an expert witness. The appellants specifically argued that Dr. Wiechel "did not possess the requisite information to express any opinion as to the impact of the vehicles and the extent of damage or whether or not there was any basis to tell the jury that no one should have sustained injury in the collisions." At trial, Dr. Wiechel had testified that he "would not expect injury to occur with these accelerations in this impact, . . ." However, the Court of Appeals rejected the appellants' argument, holding that "[a]fter having reviewed Dr. Wiechel's testimony and his qualifications as an expert witness, we find the trial court did not abuse its discretion in allowing Dr. Wiechel to testify as an expert witness." Id. at 4. The court, in its opinion, noted that Dr. Wiechel had studied biomechanical engineering, "which includes the study of a biological system, internal biomechanics, and how forces relate to and cause injury." Id. at 3. See also Miller v. Bike Athletic Co., 80 Ohio St.3d 607, 1998-Ohio-178,687 N.E.2d 735, in which a mechanical and biomedical engineer was qualified to testify that a high school football player's paralyzing neck injury sustained during a game would have been avoided if his helmet lining had been properly inflated.
 {¶ 45} While appellants, in their brief, cite Azzano v.O'Malley-Clements (1998), 126 Ohio App.3d 368, 710 N.E.2d 373 in support of their argument, we find that such case is distinguishable. InAzzano, appellant Paul Azzano was injured in a motor vehicle accident and was diagnosed with acute muscle strain. At trial, the defense presented the testimony of the chief executive officer of a forensic engineering firm who testified, over objection, that, as a result of the accident, the Azzano vehicle experienced a velocity change in the collision which was "below the threshold for symptomology."
 {¶ 46} On appeal, the appellants argued that the trial court erred in permitting such expert to testify at trial, "particularly as it relates to the issue of injury." The appellate court agreed, noting, in part, that such expert did not have any degree in his field or medical training and that "no evidence was presented to demonstrate that [he] had ever been qualified to provide expert testimony in court." Id. at 376. In contrast, in the case sub judice, Dr. Wiechel has a number of degrees in engineering, has studied how force relates to injury and has testified approximately 50 times in court for both plaintiffs and defendants.
 {¶ 47} Appellants further contend that Dr. Wiechel should not have been permitted to testify since he based his opinion on hearsay and/or studies that were not in evidence. Appellants argue that "all that is known as to the underlying data of the engineer's opinion is that it is based upon "hundreds" of HIC studies that he did not perform, identify or do himself."
 {¶ 48} "Hearsay" is defined in Evid.R. 801(C) as:
 {¶ 49} ". . . a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 50} Unless an exception applies under Evid.R. 803 or 804, hearsay statements are not admissible pursuant to Evid.R. 802, which provides that: "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."
 {¶ 51} As noted by the court in State v. Echols (1998),128 Ohio App.3d 677, 698, 716 N.E.2d 728: "[r]eferences to studies by other experts in a field do not make an expert's testimony inadmissible as a learned treatise. `[I]t is perfectly proper for an expert to rely upon `facts or data * * * perceived by him,' Evid.R. 703, as well as to draw upon knowledge gained from other experts in the field, whether this knowledge was communicated orally or in writing. This information forms the `scientific, technical, or other specialized knowledge' which qualifies the witness as an expert. Evid.R. 702." Otherwise, experts would be limited to hands-on experience to form the basis of their opinions — this has never been the case. Most expert learning is derived from reading or study of others' written work." (Citations omitted).
 {¶ 52} Furthermore, as noted by the court in Kilbane v. ConsolidatedRail Corp, Cuyahoga App. No. 82397, 2004-Ohio-134, "[w]hile learned treatises may not be admitted as evidence or relied on for the truth of the opinions stated therein, experts have been permitted to refer to literature generally as forming part of the basis for their opinion. SeeGartner v. Hemmer Hamilton App. No. C-010216, 2002-Ohio-2040. We recognize that no one becomes an expert without research, education, training, and experience and that an expert is entitled to rely on this background in forming his opinion. However, there is a distinction between reference to literature as being part of the collective basis for an expert's opinion and reference to literature as substantive evidence."Kilbane, supra., at 2.
 {¶ 53} In Limle v. Laboratory Corp. of Am. (2000),137 Ohio App.3d 434, 738 N.E.2d 890, the appellant, who was executor of the estate of the decedent, argued that the trial court erred in instructing the jury to disregard the testimony of the appellant's expert with respect to the decedent's survivability had negligence not occurred. The appellees, in turn, argued that the trial court properly struck such expert's opinions because they were based solely on medical articles that were not admitted into evidence. The appellate court in rejecting such argument and holding that the trial court erred in striking the expert's testimony, stated, in part, as follows:
 {¶ 54} "First, Stock's [the expert's] opinion as to the decedent's chances of surviving had she been diagnosed sooner was not based solely on the articles. The excerpt quoted above cannot be taken out of context, and Stock clearly based his opinion testimony on the facts of the underlying case as well.
 {¶ 55} "Further, no party disputes that Stock was an expert. An expert is a witness who may testify at trial because of special, scientific, or technical knowledge that will assist the trier of fact. State v. Minor
(1988), 47 Ohio App.3d 22, 24, 546 N.E.2d 1343, 1347. As such, an expert necessarily brings to each case knowledge of facts and data that are not in evidence. Id. To the extent an expert applies to the facts in evidence a scientific principle, theory, calculation, measurement, or table, they need not be in evidence if the predicate facts are in evidence. Id" Id. at 438.
 {¶ 56} In the case sub judice, Dr. Wiechel's opinion was not based solely on the HIC studies, but rather upon his education, training and experience and on the facts of the underlying case. As noted by appellee, HIC is part of Dr. Wiechel's training and experience. At trial, Dr. Wiechel testified that he had had peer review articles published and some of the articles dealt with using "HIC in pedestrian accidents." Transcript at 340. As noted by appellee "[i]n light of Dr. Wiechel's writing and professional experience which utilizes HIC on a regular basis, HIC constitutes facts and data that were perceived by him pursuant to Evid. R. 703."
 {¶ 57} Furthermore, the erroneous admission of testimony does not justify reversal of an otherwise valid adjudication where substantial rights of the complaining party are not affected or the court's action is not inconsistent with substantial justice. O'Brien v. Angley (1980),63 Ohio St.2d 159, 164, 407 N.E.2d 490. To determine whether substantial justice has been done, we must not only weigh the prejudicial effect of the error, but also, we must determine whether if the error had not occurred, the trier of fact would probably have made the same decision. Id. at 164-165. See also Hallworth v. Republic Steel (1950),153 Ohio St. 349, 91 N.E.2d 690, paragraph three of the syllabus.
 {¶ 58} In the case sub judice, after testifying as to the experiment he conducted and his conclusion based upon the same that "the accelerations and forces that we have here do not reach the level where injury occurs", Dr. Wiechel testified that "there are other methods or other ways that can be used to determine whether or not there would be an injury." Transcript at 368. According to Dr. Wiechel, "[o]ne example of that . . . would be the head injury criteria or the HIC." Transcript at 368. Moreover, the following is an excerpt from Dr. Wiechel's testimony on cross-examination:
 {¶ 59} "Q. . . . Are you relying on this HIC study, by the way, when you're formulating injury criteria here?
 {¶ 60} "A. I can't say that I'm relying on it. I am using it, and I've talked about it here, and it is accepted throughout the world.
 {¶ 61} "Q. So let's explore that just a tad more if we can.
 {¶ 62} "A. Okay.
 {¶ 63} "Q. You're not relying on it, you're just mentioning it. So if you're not relying on it, then you're not relying [on] it to a reasonable degree of scientific certainty, correct?
 {¶ 64} "A. No, I don't think that's quite true.
 {¶ 65} "Q. Well, it's true that you're relying on the HIC study to a reasonable degree of scientific certainty, aren't you?
 {¶ 66} "A. With respect to using HIC as a means of quantifying the acceleration and quantifying injury, that would be correct.
 {¶ 67} "Q. So HIC is an integral part of your opinion in this case, that you couldn't do it without HIC, right?
 {¶ 68} "A. No that's not true.
 {¶ 69} "Q. Well, I'm confused now. First you say you're relying on it to a reasonable degree of scientific certainty, then you're not, so let's start from the beginning again. The HIC study, are you — can you expressyour opinion here without relying on the HIC study?
 {¶ 70} "A. Yes.
 {¶ 71} "Q. And did you rely on you — on the HIC study to produce your report there today?
 {¶ 72} "A. For one — I think it's one paragraph or one sentence, yes.
 {¶ 73} "Q. Okay.
 {¶ 74} "A. The HIC — I was going to say the HIC studies because it's not just one, it's a collection.
 {¶ 75} "Q. So you're basing your opinion, at least in part, and that opinion is to a reasonable degree of scientific certainty on the HIC study?
 {¶ 76} "A. On the HIC studies.
 {¶ 77} "Q. HIC studies?
 {¶ 78} "A. For that one aspect, yes." Transcript at 384-385. (Emphasis added.)
 {¶ 79} From the foregoing, it is apparent that Dr. Wiechel arrived at the same conclusion whether or not the HIC studies were considered. The admission of the HIC studies, therefore, does not constitute reversible error even assuming that the trial court erred in admitting the same.
 {¶ 80} Based on the foregoing, appellants' first assignment of error is overruled.
 II {¶ 81} Appellants, in their second assignment of error, maintain that the trial court erred in denying appellants' motion to prohibit Dr. Friedman from testifying at trial. We disagree.
 {¶ 82} Appellants argue, in part, that Dr. Friedman's testimony should have been excluded from trial since he relied, in part, on handwritten notes relating to appellant's medical history that were taken by Dr. Friedman's assistant prior to Dr. Friedman's examination of appellant. Appellants contend that this medical history, which was not admitted into evidence, constituted hearsay and that Dr. Friedman improperly relied upon the same in formulating his opinion.
 {¶ 83} Evid. R. 803(4) allows, as an exception to the hearsay rule, the admission of statements made in order to further medical treatment or diagnosis. Evid. R. 803(4) states, in pertinent part:
 {¶ 84} "Statements made for the purposes of medical diagnosis or treatment and describing medical history, past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment [shall be excepted from the hearsay rule]."
 {¶ 85} Statements which are admissible under Evid R. 803(4) are assumed to be reliable since the effectiveness of treatment often depends upon the accuracy of the information related to the physician. See Statev. Dever, 64 Ohio St.3d 401, 1992-Ohio-41, 596 N.E.2d 436. In State v.Barnes (Apr. 8, 1985), Clermont App. No. CA84-05-041, 1985 WL 8654, the court stated, in relevant part, as follows:
 {¶ 86} ". . . the language of the rule itself does not require that such statements be made to physicians. . . . [C]ertainly nurses, orderlies and other hospital personnel might on occasion be privy to these statements. Since the rule does not limit its application to statements made to physicians, statements which satisfy its criteria should be admitted without imposing additional criteria not required by the legislature. Second, admission of statements made to persons other than physicians would still be subject to the same indicia of reliability . . . as long as they were being made for purposes of diagnosis and treatment." Id. at 14.
 {¶ 87} Appellant's statements to Dr. Friedman's assistant clearly fall within such exception. While, as appellants note, appellant was not seeing Dr. Friedman for treatment, she was seeing him for an independent medical examination and diagnosis in connection with her lawsuit. While appellants further assert that the common law basis for reliability of statements, as set forth in Boston, supra., does not apply since appellant was not seeing Dr. Friedman for treatment, we disagree. It was clearly to appellant's benefit to be truthful when giving her medical history to Dr. Friedman's assistant in the hopes that Dr. Friedman would confirm the diagnosis that appellant had received from her own doctors.
 {¶ 88} Appellants further assert that Dr. Friedman should not have been permitted to testify at trial since he relied on Dr. Wiechel's report in rendering his opinion. Appellants, however, did not raise such issue in the trial court. Generally, errors occurring at the trial level should be cured there, if possible. For this reason, if such an error is not raised before the trial court, it is considered waived and may not be raised for the first time on appeal. VanCamp v. Riley (1984),16 Ohio App.3d 457, 463, 476 N.E.2d 1078; Boyd v. Edwards (1982),4 Ohio App.3d 142, 151, 446 N.E.2d 1151.
 {¶ 89} Appellants' second assignment of error is, therefore, overruled.
 {¶ 90} Accordingly, the judgment of the Guernsey County Court of Common Pleas is affirmed.
Edwards, J. Farmer, P.J. and Wise, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas is affirmed. Costs assessed to appellants.