MEDPARTNERS, INC. et al., Appellees,

v.

CALFEE, HALTER & GRISWOLD, L.L.P., Appellant.

[Cite as *MedPartners, Inc. v. Calfee, Halter & Griswold, L.L.P.* (2000), 140 Ohio App.3d 612.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77844.

Decided Dec. 18, 2000.

*Kohrman, Jackson & Krantz P.L.L., Sarah Gabinet* and *Ari H. Jaffe,* for appellees.

*Baker & Hostetler, L.L.P., Wayne C. Dabb, Jr., Charles E. Jarrett* and *Christina N. Smith,* for appellant.

JAMES D. SWEENEY, Judge.

Defendant-appellant Calfee, Halter & Griswold, L.L.P. ("Calfee")[1] appeals from the jury verdict rendered in favor of the plaintiffs-appellees MedPartners, Inc. and Emergency Physicians Services, Inc. ("EPS"). The appellant asserts that the verdict is against the manifest weight of the evidence, that the trial court erred in failing to grant its motion for a directed verdict, and that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict.

The appellees filed this action to recover for legal malpractice they alleged Calfee committed during its representation of EPS. The jury returned its verdict finding that Calfee was negligent as to MedPartners and EPS and that this negligence directly and proximately caused damage to both MedPartners and to EPS. The jury found EPS to be seven percent negligent for its own damage and found Calfee to be ninety-three percent negligent for EPS' damages. The jury found MedPartners to be twenty percent negligent and Calfee to be eighty percent negligent. However, the jury then awarded zero damages to EPS. The total amount of damages awarded by the jury as to MedPartners was $2,950,000.

The record reflects that MedPartners, a large publically held corporation, was in the business of managing physician practices. EPS was a small privately held corporation owned by sixty-two actively practicing emergency room physicians. MedPartners acquired EPS through a "reverse triangular merger" by forming a wholly owned subsidiary called EPS Merger Corporation. EPS Merger was then merged with and into EPS. EPS, as the surviving corporation, then became a wholly owned subsidiary of MedPartners. The merger was accomplished by the exchange of all outstanding shares of EPS for $44,000,000 of MedPartners common stock.

---

**1.** Defendant Kenneth Schmeichel was dismissed by stipulation of the parties prior to trial and he is not a party to this appeal.

EPS had a longstanding attorney-client relationship with Calfee, who had traditionally performed all of its corporate legal work. As a part of this work, Calfee drafted a stock redemption agreement that was entered into by each individual shareholder. In the stock redemption agreement is the following "lookback" provision, which gives the shareholders the right to participate in a merger occurring within a year of the redemption of stock:

"SECTION 7.   Optional Liquidation of the Company

"7.1   In the event that the Company becomes obligated to purchase the Shares of the Shareholder hereunder as provided for in Section 2 of this Agreement, and the remaining shareholder or shareholders does or do not desire to continue the Company's existence, the remaining shareholder or shareholders may, at his or their election, liquidate the Company in lieu of purchasing the Shares which it would otherwise be obligated to purchase. **In the event that the Company does purchase the Shares of Shareholder as provided for hereunder, and thereafter the Company is sold and/or liquidated within one (1) year from the date of such purchase, Shareholder, or his heirs or estate, shall participate pro rata in the proceeds of any such liquidation or sale** (whether of stock or of substantially all of the assets) in excess of the price paid for his Shares by the Company to the same extent that such Shareholder would have participated in such liquidation and/or sale had his Shares not been purchased." (Boldface added.)

Prior to the merger, four of the shareholders of EPS opted to redeem their stock under the stock agreement and one shareholder was effectively terminated due to disability.

Calfee also represented EPS in the merger negotiations with MedPartners. As a part of this representation, Calfee provided to MedPartners a certified list of those shareholders eligible to participate in merger and receive the MedPartners stock. This list did not include the five redeemed shareholders.

Two weeks after the merger closed, Dr. Tafuri, through counsel, informed EPS and Calfee that he wished to receive his pro rata share of the merger proceeds. It was at this point that Calfee realized, for the first time, that there was a lookback provision contained in the stock option agreement. The record is quite clear that this fact had been overlooked by Calfee and that Calfee had failed to consider rights of these five redeemed shareholders when negotiating the merger agreement. The record is equally clear that MedPartners had, in fact, discovered the lookback provision when performing their due diligence review of the EPS paperwork prior to the merger agreement. MedPartners internally determined that they had no liability to these five shareholders.

Subsequent to the discovery by Calfee of the lookback provision, Calfee contacted MedPartners and EPS. MedPartners placed the stock that was to have been transferred to the fifty-seven shareholders of EPS into escrow. The EPS shareholders filed an action in federal district court seeking to obtain the stock. Ultimately, the federal district court ordered the stock distributed to the shareholders. Three of the redeemed shareholders, Dr. Tafuri, Dr. Ogen, and Dr. Bauer, filed actions in the Cuyahoga County Court of Common Pleas seeking to enforce the lookback provision. MedPartners did not prevail in its attempts to escape liability and was ordered, along with EPS, to pay (1) Dr. Tafuri $783,183.62 plus prejudgment interest in the amount of $90,992.20, (2) Dr. Bauer $788,915.45 plus prejudgment interest in the amount of $91,657.27, and (3) Dr. Ogen $947,180.95 plus prejudgment interest in the amount of $110,045.39. MedPartners filed this action to recover the amounts paid to these doctors.

The appellant sets forth two assignments of error, the first of which will be considered first.

The second assignment of error:

"The trial court erred in denying Calfee's motions for directed verdict and judgment notwithstanding the verdict."

The appellant argues that because MedPartners failed to establish that it had any legal malpractice claim as to Calfee, the trial court should have granted either the directed verdict or the motion for judgment notwithstanding the verdict. The appellant asserts that it owed no duty to MedPartners and that it could not have committed malpractice against an entity to which it owed no duty.

This court recently set forth the standard of review when considering a motion for a directed verdict in *Wawrzyniak v. Zayat* (Aug. 17, 2000), Cuyahoga App. No. 76487, unreported, 2000 WL 1176885:

"In addressing the first assignment of error as to whether the trial court erred in granting a directed verdict, this court must look to Civ.R. 50(A) and current case law dictating the standard of review. A motion for directed verdict is to be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); *Crawford v. Halkovics* (1982), 1 Ohio St.3d 184 [1 OBR 213], 438 N.E.2d 890; *The Limited Stores, Inc. v. Pan American World Airways, Inc.* (1992), 65 Ohio St.3d 66, 600 N.E.2d 1027.

"A directed verdict is appropriate where the party opposing it has failed to adduce any evidence on the essential elements of his claim. *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357 [360–361]. The issue to be determined involves a test of the legal sufficiency of the evidence to

allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141 [141–142]; *Vosgerichian v. Mancini Shah & Associates, et al.,* 1996 Ohio App. LEXIS 788 (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943 [1996 WL 86684]. Accordingly, the courts are testing the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69 [23 O.O.3d 115], 430 N.E.2d 935 [937–938]. Further, since a directed verdict presents a question of law, an appellate court conducts a *de novo* review of the lower court's judgment. *Howell v. Dayton Power and Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957 [961]; *Keeton v. Telemedia Co. of S. Ohio* (1994), 98 Ohio App.3d 405, 409, 648 N.E.2d 856 [858–859]."

■ It is clear that the standard of review for a ruling on a motion for judgment notwithstanding the verdict is the same one applicable to a motion for a directed verdict. *Grossman v. Andros* (1999), 135 Ohio App.3d 712, 735 N.E.2d 499, citing to *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334 and *Bruggeman v. Fishbaugh* (1994), 96 Ohio App.3d 200, 644 N.E.2d 1051.

This court discussed the standard a plaintiff must meet in order to establish legal malpractice in *Kohrman, Jackson & Krantz, P.L.L. v. Fraiberg* (Sept. 10, 1998), Cuyahoga App. No. 73276, unreported, 1998 WL 601087:

"To establish a case for legal malpractice one must prove three elements: 1) the attorney owed a duty; 2) there was a breach of that duty and the attorney failed to conform to the standard of care required by law; and 3) there is a causal connection between the conduct complained of and the resulting damage. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 427, 674 N.E.2d 1164 [1169–1170]."

In order to prove each and every element of its case, MedPartners was required to provide evidence that it was owed a duty by Calfee. To resolve whether MedPartners has met this burden, this court must consider the difference between a parent corporation's relationship with its subsidiary corporations and the relationship between constituent corporations and surviving corporations in a merger. The Ohio Supreme Court has held that parent and subsidiary corporations are distinct legal entities. *White Motor Corp. v. Kosydar* (1977), 50 Ohio St.2d 290, 296, 4 O.O.3d 451, 454, 364 N.E.2d 252, 255–256. The court has also held that a surviving corporation after a merger remains a separate and distinct corporation, with its own assets, property, and rights. *Hoover Universal, Inc. v. Limbach* (1991), 61 Ohio St.3d 563, 575 N.E.2d 811. It is clear that only the surviving corporation of a merger succeeds to the assets, property, and right of the constituent corporations of the merger. R.C. 1701.82(A)(3).

In the case *sub judice*, when reviewing the trial court's decision to deny both the directed verdict and the motion for judgment notwithstanding the verdict, this court is forced to conclude that the trial court erred. MedPartners failed to prove the existence of an attorney-client relationship between itself and Calfee that would have given rise to a concurrent duty. EPS as the surviving corporation after the merger with EPS Merger Corporation, succeeded to the assets, property, and rights of the constituent·entities, EPS and EPS Merger Corporation. MedPartners, because it was not a party to the merger, was not the surviving corporation and did not succeed to any assets, property, or rights of EPS. EPS did become a wholly owned subsidiary of MedPartners and was, under *White Motor Corp* and *Hoover Universal,* a distinct legal entity. Therefore, while Calfee owed a duty to EPS, it did not owe a duty to MedPartners.

■ Under Ohio law, an attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously. *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph one of the syllabus. There has been no allegation by the parties that MedPartners was in privity with EPS or that Calfee acted maliciously. Thus, MedPartners may not prevail on a malpractice claim where there was no attorney-client relationship between itself and Calfee.

The appellant's second assignment of error is well taken.

The first assignment of error is overruled as moot pursuant to App.R. 12.

Judgment of the trial court is reversed. Judgment entered for the appellant.

*Judgment reversed.*

ROCCO, P.J., and MICHAEL J. CORRIGAN, J., concur.