JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff William Lightbody appeals the trial court's granting of defendant-appellee Charles Rust's motion for directed verdict on the basis of accord and satisfaction. Lightbody is a patent attorney who worked for the firm of Woodley, Krost Rust. Rust, a partner with the firm, was one of several people who assigned work to Lightbody. Lightbody never had a written agreement with the firm, but he would receive one half of any amounts actually received by the firm for work he had done on a file. He would present his hours to the firm and they paid him one half of all the moneys collected from the client for those hours Lightbody worked. Thus Lightbody would be paid for his hourly billings as long as the client paid the firm. There was no time limit on this open-ended agreement.
 {¶ 2} In the spring of 1982, a longtime client of Rust's, Mr. Cooper ("the inventor"), contracted with Rust to pursue a patent infringement against Harris Company ("the company"). Rust had a longstanding professional relationship with the inventor and had, in fact, filed the original patent which was the subject of the suit between the inventor and the company. Because the inventor was short on money, Rust and the inventor signed a contingency contract which provided Rust with 40% of any proceeds from the patent if the inventor prevailed in the suit.
 {¶ 3} Lightbody claims that between the fall of 1982 and the spring of 1983, Rust approached him and offered to split his 40% of the proceeds Rust would receive from the contingency agreement if Lightbody would work on the suit without his usual rate of pay, in other words, now on a contingency basis for just this case. Lightbody agreed. Again, none of this agreement was put into writing. He claims that he did the majority of the work on the case, although he concedes that he never gave the court a notice of appearance and his name is not found on any of the voluminous pleadings.
 {¶ 4} The jury in the infringement case determined that although the inventor's patent was valid, the company had not infringed upon it. Rust pursued an appeal, but he and the inventor agreed that the appeal would be billed on an hourly basis. Lightbody was compensated in his usual hourly manner for the work he did on the appeal.
 {¶ 5} During the pendency of the appeal, the parties settled. The company agreed to compensate the inventor by paying him $225,000.00 and giving him the rights to eighteen patents they held.
 {¶ 6} The evidence shows that Lightbody received his first check for the work he did on the case on March 14, 1990 for $28,000.00. On February 14, 1992, he received a second check in the amount of $217,000.00. At the time Rust gave him the second check, according to Lightbody's testimony, Rust stated that this was full payment for the work Lightbody had done on the case in which he was working on a contingency basis. Lightbody claims he protested long and hard that he had not been given his 40% of the contingency fee Rust was receiving[1], but that Rust was insistent that this was Lightbody's final payment on the case.
 {¶ 7} Nonetheless, Lightbody cashed the check and remained with the firm for more than another year, but he repeatedly raised the issue of his share of the contingency during this year. He left the firm in 1993 and filed this suit in 1998. He asserted multiple contract and tort claims against Rust and the firm.
 {¶ 8} At the beginning of trial, all the defendants except Rust were dismissed. Lightbody presented his own testimony, that of the inventor, and cross-examination testimony of Rust. After Lightbody finished his case in chief, Rust moved for a directed verdict on, among other things, accord and satisfaction. Lightbody protested that he was being "ambushed" because this defense had not been briefed previously. He conceded that Rust had included accord and satisfaction as an affirmative defense in his answer but claimed that by omitting it from the trial brief, Rust had waived his right to raise it on directed verdict. The trial court recessed for the evening and ruled the next day that Lightbody's negotiation of the check did indeed constitute accord and satisfaction. The court then dismissed the case with prejudice.
 {¶ 9} Lightbody appeals, stating five assignments of error. Because the first two assignments of error both address accord and satisfaction, and that issue could be dispositive of the case, we address those together. They state:
[I] The Trial Court Erred In Granting Defendant Rust's Motion For Directed Verdict On The Affirmative Defense Of Accord And Satisfaction.
[II] In Construing The Elements Of The Making Of An Oral Accord, The Trial Court Erred In Determining That A Debtor May Give Oral Notice To A Creditor That A Check Is Being Tendered As Full Payment, But A Creditor May Not Utilize The Same Form And Provide The Debtor With Oral Notice That The "Full Payment" Check Is Being Accepted Under Protest.
 {¶ 10} An appellate court performs a de novo review of a ruling for directed verdict. As with a summary judgment, the reviewing court shall construe the evidence "most strongly in favor of the nonmoving party and, after so doing, determine whether reasonable minds could only reach a conclusion which is against the nonmoving party." Washington v.Strowder's Funeral Chapel, Cuyahoga App. No. 72585, 1999 Ohio App. LEXIS 1844, at *26-27, citing Titanium Industries v. S.E.A., Inc. (1997),118 Ohio App.3d 39. Rather than weighing the evidence or testing the credibility of witnesses, the reviewing court instead assumes that all the evidence presented is true and gives the benefit of doubt to all reasonable inferences drawn from the evidence presented. Id., citingBecker v. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202, 206. The appellate court is testing the legal sufficiency of the evidence and not its weight or credibility. Medpartners v. Calfee, Halter, Griswold LLP
(2000), 140 Ohio App.3d 612, 615-616. This court is addressing, then, an issue of law, not of fact. Id. The court accepts the evidence presented at trial as though it were true and addresses the legal issues in light of those facts.
 {¶ 11} "Accord and satisfaction is a common-law doctrine where there is a contract between a creditor and debtor for settlement of a claim by some performance other than that which is due." A.F.C. Interiorsv. DiCello (1989), 46 Ohio St.3d 1, 2. The creditor accepts, therefore, an amount or payment different from that originally agreed upon on the contract. Under the common-law doctrine, four elements are required to have an accord and satisfaction: first, proper subject matter; second, competent parties; third, mutual assent; and fourth, consideration.Warner Storage v. Systemation (1989), 64 Ohio App.3d 1, 5.
 {¶ 12} No one contests that the oral contract which is the subject of this suit is a proper subject matter or that the parties are not competent. The primary issue is the question of mutual assent.
 {¶ 13} There are two safeguards built into the doctrine to protect creditors: first, there must exist a good-faith dispute about the debt, and, second, the creditor must be reasonably notified that the debtor intends the check to be full satisfaction of the debt. Allen v. R.G.Industrial Supply (1993), 66 Ohio St.3d 229, 232. In the case at bar, the bona fide dispute concerns the amount due on the oral contract. As to the second safeguard, Lightbody himself testified that Rust made it very clear that the second check was payment in full on the contract.
 {¶ 14} Although the law of accord and satisfaction is a common-law doctrine, it was governed in part by statute between 1962 and 1994. In 1962, the legislature enacted R.C. 1301.13, which stated:
 {¶ 15} "A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest," or the like are sufficient."[2] The Ohio Supreme Court then interpreted this statute in A.F.C. Interiors, supra, stating:
1. R.C. 1301.13, which embodies Section 1-207 of the Uniform Commercial Code, supersedes the common-law doctrine of accord and satisfaction in the "full payment" or "conditional check" situation.
2. Pursuant to R.C. 1301.13, where a debtor tenders a check to a creditor as payment in full for less than the amount alleged to be owed on the debt, the creditor may accept the check as partial payment on the debt so long as the creditor explicitly reserves all rights by endorsing the check "under protest" or any legend sufficient to apprise the debtor that the check is not accepted as full payment on the debt. In so doing, the creditor does not thereby prejudice any rights reserved on the balance alleged to be due. (Seeds Grain Hay Co. v. Conger [1910],83 Ohio St. 169, 93 N.E. 892, overruled.)
Id. at syllabus.
 {¶ 16} The contract and payment in the case at bar both occurred during the period of time that the statute was in effect. The statute is, therefore, applicable. Lightbody does not dispute that he did not place a restrictive endorsement on the check before he cashed it. He argues, however, that because Rust did not write "full payment" or words to that effect on the check, but rather orally notified him that the check was payment in full, Lightbody's oral protestations should be adequate under the statute to preserve his objection and prevent accord and satisfaction. We agree.
 {¶ 17} The syllabus in A.F.C. Interiors specifically states that the creditor's rights must be reserved by writing the reservation on the check. The facts in A.F.C. Interiors differ, however, from those in the case at bar in that the debtor in A.F.C. wrote on the check itself that it was full payment of the debt and the creditor crossed those words out and wrote "Payment on account." Here, all communications were oral. Lightbody does not deny that he knew that Rust intended the check to constitute full and final payment of the contract. Nothing in the record refutes Lightbody's statement that Lightbody protested when accepting the check. Rust's testimony does not address whether Lightbody protested when he accepted the check. However, Rust's testimony occurred only by means of Lightbody's cross-examination of him as a hostile witness, because the trial was dismissed before the defense case was presented.
 {¶ 18} The purpose of the notation of payment in full on a check is to assure that the creditor knows that by cashing the check he is jeopardizing his right to collect the balance of the amount owed. If the creditor is not aware that the payment is intended to payment in full, then the check is merely a part payment. Allen, supra, at 232. "To achieve an accord and satisfaction the debtor must make it clear, in the eyes of a reasonable person, that the check is being tendered only on the condition that it is taken in full payment of the disputed claim. A corollary to this rule is that the intention of the creditor in negotiating the check is not relevant." Id. at 233.
 {¶ 19} Rust relies on the seminal case of Allen to support its claim that Lightbody's intent is not relevant. In Allen, the creditors were injured parties who cashed a check sent by the tortfeasor's insurance company. The creditors had not, however, engaged in negotiations with the insurance company and were unaware that the check had been tendered as full payment. The Allen court held that no accord and satisfaction existed because neither the insurance company nor the torfeasor could prove that the injured parties were aware that the check was tendered as full payment. Allen, moreover, does not apply the statute which is controlling in this case.
 {¶ 20} Lightbody does not dispute that he was on notice that the check was tendered as full payment. The purpose of the notation on the check, therefore, was achieved without the notation itself. Lightbody claims, however, that he fulfilled the purpose of the written disclaimer on the check when he clearly stated that he was not considering the check as full payment on the debt.
 {¶ 21} In a similar case, the Ninth Appellate District held that because the terms of the underlying contract were in dispute, the creditor's cashing of the check which had been accompanied by a letter stating that it was payment in full did not constitute accord and satisfaction. In Gertz v. Gant (June 12, 1991), Summit App. No. 14805, Ohio App. LEXIS 2888, the parties were realtors working together on a sale. They had signed a contract splitting a 10% commission equally. Unbeknownst to the creditor-realtor, the debtor-realtor changed the commission percentage terms on the contract given to the seller; the debtor-realtor thus changed the amount of the commission itself as well as the percentage due When negotiating the check from the debtor-realtor, the creditor-realtor announced that he did not consider the check to be full payment. The court noted that "[u]nlike the situation in AFC Interiors v. DiCello, supra, the check forwarded to [creditor] did not contain any language denoting that the amount was offered as full payment or a conditional check. Therefore, the absence of such language did not require [creditor] to expressly reserve any rights by noting such reservation on the check. He did, however, continuously object to the payment." The court found, "therefore, that the check was cashed under protest." Id, at *12. Similarly, in the case at bar, Lightbody claimed he disputed the terms of the contract with Rust and vociferously told Rust that he did not consider the check tendered as payment in full.
 {¶ 22} When the facts are clear and undisputed, the trial court may decide a question of accord and satisfaction. BancOhio v. Mid-OhioChemical (June 27, 1991), Pickaway App. No. 90 CA 15, citing Duplantiev. National Cash Register (1932), 42 Ohio App. 112. However, "[w]here the negotiations surrounding an alleged accord and satisfaction permit conflicting deductions, they are to be resolved by the trier of fact. * * * Moreover, conflicting facts indicating the absence of a meeting of the minds of the parties regarding the alleged accord and satisfaction present a factual issue to be decided by a jury." Warner Storage v.Systemation (1989), 64 Ohio App.3d 1, 7, citations omitted. "An accord and satisfaction is the result of an agreement between the parties, and this agreement, like all others, must be consummated by a meeting of the minds of the parties. Mere cashing of the check did not bring the transaction within the rule of accord and satisfaction." Warner ElevatorManufacturing Co. V. Higbee (1935), 53 Ohio App. 546, 548.
 {¶ 23} The question of whether a meeting of the minds existed is seminal to the question of accord and satisfaction. "Four elements must be present to have an accord and satisfaction: proper subject matter, competent parties, mutual assent, and consideration. 1 American Jurisprudence 2d 304, Accord and Satisfaction, Section 4. As an accord and satisfaction is the result of an agreement between the parties, it cannot be consummated unless the creditor accepts the lesser amount with the intention that it constitutes a settlement of the claim." Shady AcresNursing Home v. Rhodes (1983), 7 Ohio St.3d 7, 8, citing Warner ElevatorMfg. Co. v. Higbee (1935), 53 Ohio App. 546. That Lightbody cashed the check does not indicate accord and satisfaction. "It is established law in Ohio that `the mere acceptance of a smaller sum than that which is actually due upon a contract, although it purports to be in full, cannot be said to be an accord and satisfaction.'" American General Finance v.Beemer (1991), 73 Ohio App.3d 684, 688, citing 15 Ohio Jurisprudence 3d (1979), Compromise, Accord, and Release, Section 28; see, also, Yin v.Amino Products Co. (1943), 141 Ohio St. 21, 46 N.E.2d 610.
 {¶ 24} Because the terms of the underlying contract are in dispute, and because Lightbody claims he clearly indicated that he did not consider the check to be full payment when he negotiated the check, we find that issues of fact remain. This assignment of error has merit.
 {¶ 25} For his third assignment of error, Lightbody states:
[III] The Trial Court Erred In Holding That Tort Claims Arising From A Contract Are Governed By The Four Year Statute Of Limitations.
 {¶ 26} In his complaint, Lightbody filed causes of action alleging, in addition to breach of contract, causes of action for breach of fiduciary duty owed by a partner; breach of fiduciary duty owed by constructive trustee; fraudulent misrepresentation; and theft, conversion, embezzlement.
 {¶ 27} It is undisputed that Lightbody's cause of action accrued in 1992 when Rust informed him that he would receive no additional funds on the case. Lightbody's action was filed six years later, outside the statute of limitations for a tort under R.C. 2305.09, which states:
An action for any of the following causes shall be brought within four years after the cause thereof accrued:
(A) For trespassing upon real property;
(B) For the recovery of personal property, or for taking or detaining it;
(C) For relief on the ground of fraud;
(A) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, 2305.14 and 1304.35
of the Revised Code.
If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.
 {¶ 28} Rust filed a partial motion for summary judgment of the tort counts because they were filed after the statute of limitations expired. Lightbody countered that subsection (D) of the statute provided an exception for torts arising on a contract and therefore he did not miss the statute of limitations for those claims.
 {¶ 29} Lightbody errs. The courts have consistently ruled that a suit arising from a single instance cannot be classified as both a tort and breach of contract. "Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." Schwartz v. BankOne (1992), 84 Ohio App.3d 806, 810. That the acts alleged would be tortious conduct under noncontractural circumstance does not make a breach of a contract a tort. "It is not a tort to breach a contract, no matter how willful or malicious the breach." Salvation Army v. Blue Crossand Blue Shield (1993), 92 Ohio App.3d 571, 578.
 {¶ 30} Because his first cause of action states breach of contract, Lightbody cannot also make a tort claim on the same breach. A party who claims damages from actions taken as a result of a contract is precluded from also claiming those actions were tortious. Lightbody's complaint asserts that he and Rust had a valid contract and that Rust's actions violated the contract and caused his damages. By claiming the existence of a contract, Lightbody is foreclosed from alleging tort from the same actions.
 {¶ 31} The third assignment of error is overruled.
 {¶ 32} Lightbody's fourth and fifth assignments of error address Rust's expert witness and will be addressed together:
[IV] The Trial Court Erred In Denying Mr. Lightbody's Motion in Limine
To Exclude Defendant's Expert Testimony When Disclosure Of The Expert Was Made Ten Months After The Deadline For Disclosing Expert Witnesses And Submitting Expert Reports.
[V] The Trial Court Erred In Qualifying Defendant's Expert As An Expert On The Subject Of Quantum Meriut Value Of Attorney Fees Under An Agreement To Share The Proceeds Of A Contingency Fee Agreement When The Proffered Expert Has Not [sic] Knowledge Of Sharing Contingency Fee Proceeds.
 {¶ 33} Rust named his expert within the time limit set by the court but did not forward the expert's report until thirty days before trial, although the case management order required it be forwarded one month after Lightbody's expert report was due. Lightbody now claims prejudice and seeks this court to order the trial court to bar the testimony.
 {¶ 34} If this case returns to trial, this decision is within the province of the trial court. If, following that trial, Lightbody chooses to appeal the issue, he may do so at that time. For this court to rule on the issue now would be premature because the expert did not testify in the trial being addressed in this appeal.
 {¶ 35} The fourth and fifth assignments of error are moot.
 {¶ 36} Rust states three "conditional" cross-appeal assignments, which he states are to be addressed only if this court reverses the trial court's ruling on the issue of accord and satisfaction. The first assignment of error states:
[I] The Trial Court Erred In Failing To Grant Summary Judgment And/or Directed Verdict In Favor Of Rust On The Grounds That The Alleged Oral Contract Was Barred By The Statute Of Frauds.
 {¶ 37} Rust argues that because the alleged oral contract between Lightbody and Rust could not have been completed within one year, the contract is barred by the statute of frauds. Overruling Rust's motion for summary judgment on this issue, the trial court stated, "The Court Finds That Plaintiff's Side Of The Alleged Oral Contract Was Capable Of Being Performed Within One Year And Thus Falls Outside The Statute Of Frauds." Docket entry September 7, 2001, caps in original.
 {¶ 38} The statute controlling in this issue is R.C. 1335.05, which states: "No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05.
 {¶ 39} The issue, then, is whether this contract could possibly have been performed within one year. Rust argues that it could not have, because the payments on the contingency contract were to be made for the life of the patent, which exceeded one year. If he had contracted to share a percentage of those payments with Lightbody, the payments would require the agreement to last longer than one year.
 {¶ 40} This argument ignores, however, that to be governed by the statute of frauds, a contract does not need to be completed within one year. It only needs to have a potential of being completed within one year. "An alleged oral agreement to pay money in installments is `an agreement that is not to be performed within one year' pursuant to R.C.1335.05 when the installment payment obligation exceeds one year. However, where the time of payment under the agreement is indefinite or dependent upon a contingency which may happen within one year, the agreement does not fall within the `not to be performed within one year' provision of R.C. 1335.05." Sherman v. Haines (1995), 73 Ohio St.3d 125, syllabus. In the case at bar, neither Lightbody nor Rust could have predicted with certainty that the results of the case would be installment payments from the patent. At the time they entered into the agreement, the case could have settled within one year with a lump sum payment; it could have been dismissed on summary judgment; summary judgment could have been granted in favor of Rust's client; or the federal court could have held that the patent was not valid. Numerous outcomes, all of which could have been completed within a year, were possible at the time Rust and Lightbody entered into their agreement. "A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is still not within the Statute of Frauds if at the time the contract is made, there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year. * * * Simply put, * * * if an agreement may be terminated or completed within a year upon the happening of some contingency, it is not covered by the Statute of Frauds." Ford v. TandyTransp.,(1993) 86 Ohio App.3d 364, 382. See also, Robnolte v. Kohart
(1947), 81 Ohio App. 1, paragraph one of the syllabus.
 {¶ 41} The trial court did not err in denying Rust's motion for summary judgment on the issue of the statute of frauds. This assignment of error is without merit.
 {¶ 42} For his second cross-appeal, Rust states:
[II] The Trial Court Erred In Denying Rust's Motion For Directed Verdict On Lightbody's Quantum Meriut Claim.
 {¶ 43} Lightbody's complaint states a cause of action for unjust enrichment: "Rust has received, and continues to receive, the benefit of [Lightbody's] services without full payment for said services." The complaint also alleges fraudulent misrepresentation by Rust concerning the payment under the contract. "A party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship in the absence of fraud, bad faith or illegality." Wolfer Enterprises v. Snider (1999), 132 Ohio App.3d 353,357, citations omitted. In the case at bar, however, Lightbody is alleging fraud on the part of Rust in performing the contract.
 {¶ 44} The doctrine of quantum meruit is an equitable remedy giving "rise to obligations imposed by law, irrespective of the intentions of the parties, in order to prevent an injustice when one party retains a benefit from another's labors. * * * The doctrine [is] inapplicable if an express agreement existed concerning the services for which compensation is sought; the parameters of the agreement limit the parties' recovery in the absence of bad faith, fraud or illegality."Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 800, citations omitted. In the case at bar, however, the existence of a contingency contract between Rust and Lightbody is disputed. Although Lightbody claims that the contract exists, Rust refers to it as "the alleged oral contract." Appellee's brief at 1. In another case involving an alleged breach of contract with a cause of action for quantum meruit, the Tenth District held that "summary judgment should not have been granted in favor of [defendant] concerning appellant's quantum meruit claim because sufficient evidence was presented showing that appellant performed services for [defendant] and that appellant was not paid for those services. We also note that if it is determined that appellant and [defendant] entered into a contract concerning appellant's services, appellant cannot recover on his quantum meruit claim because a `party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship in the absence of fraud, bad faith or illegality.' Wolfer Enterprises, Inc. v. Overbrook DevelopmentCorp., 1999 Ohio App. LEXIS 596 (Feb. 26, 1999), Hamilton App. No. C-980115 * * *." Marty Matusoff Assocs. v. Kuhlman, Sept. 28, 1999), Franklin App. No. 98AP-1405, 1999 Ohio App. LEXIS 4510, at *15-16, citations omitted.
 {¶ 45} Similarly, in the case at bar, Lightbody cannot prevail on both causes of action.[3] As noted above, judgment on the quantum meruit claim and judgment on the contract claim are mutually exclusive. Until the dispute concerning the contract is determined, however, his claim for quantum meruit will stand. This assignment of error is without merit.
 {¶ 46} For his third cross-appeal, Rust states:
[III] The Trial Court Erred In Dismissing Defendant's Counterclaims.
 {¶ 47} Rust counterclaimed against Lightbody, alleging theft of trade secrets and confidential business information; fraud; intentional interference with contract; accounting; declaratory judgment; unfair competition; and breach of fiduciary duty. When Lightbody left Rust's firm, he took half the firm's clients with him. He admitted to telling at least one of those clients that Rust was retiring and would not be available to represent the client. This statement was not true. The trial court granted Lightbody's motion to dismiss the counterclaim because the acts were outside the statute of limitations.
 {¶ 48} "When an appellate court reviews a judgment granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, it must independently review the complaint to determine whether the dismissal was appropriate." The court's standard of review is de novo. "When construing a complaint challenged by a Civ.R. 12(B)(6) motion, a judge must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the non-moving party. * * * Dismissal of a claim pursuant to Civ.R.12(2)(6) [sic] is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. The judge, however, need not presume the truth of conclusions unsupported by factual allegations." In Defense of Deer v. Cleveland Metroparks (2000),138 Ohio App.3d 153, 160, citations omitted. Nonetheless, "a court cannot rely on allegations or evidence outside a complaint in determining" the Civ.R. 12(B)(6) motion. Rather, it must base its ruling solely on the complaint. The State ex rel. Findlay Publishing Co. V. Schroeder (1996),76 Ohio St.3d 580, 581.
 {¶ 49} After receiving several leaves to plead, Rust filed his answer and a counterclaim on May 27, 1998. The complaint states that the Lightbody's tortious acts occurred in July of 1993. Lightbody answered this counterclaim and raised the defense of statute of limitations. After this exchange of pleadings, the case was stayed pending this court's ruling on an interlocutory appeal. When the case resumed at the trial level, Lightbody filed a motion to dismiss for failure to state a claim. This motion stated that the complaint did not present any facts which would provide relief because all the claims were filed outside the statute of limitations.
 {¶ 50} Replying to this motion, Rust made two claims. First, he argued that the counterclaims were raised as a defense or set-off, which were not subject to the statute of limitations because they arose out of the same transaction. Rust's second claim was that the counterclaim was not filed outside the statute of limitations because some of Lightbody's alleged misconduct occurred in the fall of 1994. Rust attached an affidavit to his response in support of the second claim.
 {¶ 51} The trial court granted the motion and dismissed the counterclaim. The court stated that, first, the claims were not related and did not arise out of the same transaction of events. Although they were tangentially related, in that they all arose from Lightbody's employment with the firm, the trial court found Lightbody's entire claim resulted from the alleged contingency contract for the work on one particular patent case. The counterclaim, on the other hand, never mentioned that patent case. As the trial court noted in its comprehensive opinion, "the prosecution of these respective claims would in effect require separate trials, as each present different legal issues and would require totally unrelated sets of facts to be proven." Judgment entry of August 7, 2001 at 7.
 {¶ 52} Rust argued alternatively that his counterclaim was not barred by the statute of limitations because, as the affidavit he attached showed, some of the events alleged occurred in the fall of 1994, a date within the statute. The trial court correctly noted that a Civ.R 12(B)(6) motion must be limited to the face of the complaint. Although the court has the discretion to treat the motion as a summary judgment if it presents matters outside the pleadings, nothing in the rule permits the responding party to submit matters outside the pleadings if the motion has not been converted to a summary judgment.
 {¶ 53} In a similar case, the Fifth Appellate District held that a plaintiff could not defeat the motion by presenting evidence outside the pleadings. "Rather, appellant would have * * * to rest on the allegations contained in her complaint which did not include the allegation that the statute was tolled until November 1989." Wells v. Bowie (1993),87 Ohio App.3d 730, 734. Similarly, in the case at bar, Rust was confined to the allegations presented in his complaint, which stated that the alleged acts occurred in July 1993. The court could not consider the affidavit presented to support the claim that part of the cause of action accrued in the fall of 1994. The trial court did not err in granting Lightbody's Civ.R. 12(B)(6) motion.
 {¶ 54} Rust argues alternatively that the trial court should have permitted him to amend his complaint to correct the dates included. Amendment is addressed in Civ.R. 15, which states in pertinent part, "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served * * *. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires." Civ.R. 15(A). Rust points to Peterson v. Teodosio (1973), 34 Ohio St.2d 161
to support his argument that the court should have permitted the amendment. Peterson states, however:
The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. Civ.R.1(B) requires that the Civil Rules shall be applied "to effect just results." Pleadings are simply an end to that objective. The mandate of Civ.R.15(A) as to amendments requiring leave of court, is that leave "shall be freely given when justice so requires." Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and noreason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion.
Id. at 175, emphasis added. The court observed there was "no good reason why leave should have been denied." Id.
 {¶ 55} In the case at bar, the trial court clearly explained its reasons for denying leave to amend the complaint. The court noted that "defendants seek to amend their pleading more than three years after the case was filed, seven weeks after this court granted plaintiff's motion to dismiss counterclaims, and three months prior to trial. * * * Granting the proposed amendment would require this court to allow for additional dispositive motions which would necessitate a further extension of the trial date, which has been twice previously extended. Also, [Rust's firm] clearly possessed the information upon which defendants now seek to file their amended pleading four years prior to the filing of this lawsuit. * * *" Journal entry of November 6, 2001.
 {¶ 56} Furthermore, as this court noted in Csejpes v. ClevelandCatholic Diocese (1996), 109 Ohio App.3d 533, "It is well established that a trial court's determination whether to grant a motion for leave to amend a complaint will not be reversed on appeal absent an abuse of discretion. * * * To demonstrate an abuse of discretion, [plaintiff] must demonstrate more than an error of law and that the trial court's denial of her motion was unreasonable, arbitrary or unconscionable." Id. at 541-542. Under the circumstances in the case at bar, we cannot find that the trial court abused its discretion in denying the motion to amend the counterclaim. This assignment of error is without merit.
Anne L. Kilbane, P.J., Concurs; Joseph J. Nahra, J., (*Sitting By By Assignment: Judge Joseph J. Nahra, Retired, Of The Eighth District Court Of Appeals, Concurs In Part And Dissents In Part With Separate Concurring And Dissenting Opinion.
[1] The specific amount in question is not in the record. In his appellate brief, Lightbody states that "after February 13, 1994, Defendant Rust received at least 13 payments under the Contingency Fee Agreement totaling $1,237,856.70." Appellant's brief at 25, emphasis in original.
[2] In 1994, the legislature amended the statute, adding, at (B) the following: "Division (A) of this section does not apply to an accord and satisfaction."
[3] The court is qualified to determine the value of Lightbody's services: "A trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in quantum meruit should consider the totality of the circumstances involved in the situation. The number of hours worked by the attorney before the discharge is only one factor to be considered. Additional relevant considerations include the recovery sought, the skill demanded, the results obtained, and the attorney-client agreement itself." Reid, Johnson, Downes, Andrachik Webster v. Lansberry (1994), 68 Ohio St.3d 570, syllabus paragraph three.