JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Terry Kilbane ("Kilbane"), appeals the decision of the jury finding defendants-appellees, Consolidated Rail Corporation and American Financial Group, Inc. ("Conrail"), negligent in providing Kilbane an unsafe work environment, but not liable for causing his lung cancer.
 {¶ 2} Kilbane worked as a carman and gang foreman at Conrail from 1974 to 1999. During part of this period, he worked with the following asbestos-containing products: brake shoes, heat shields, insulation, gloves, and foam insulation. Kilbane smoked one-half to two packs of cigarettes per day ("ppd") from 1972 to 2002. Prior to 2002, Kilbane received results from preliminary tests indicating he may have lung cancer. He did not quit smoking at that time. Prior to 2002, he was diagnosed with emphysema, but decided not to quit smoking. He was diagnosed with small cell lung cancer in March 2002. Following that diagnosis, he quit smoking. He admitted ignoring the advice of two physicians that he quit smoking.
 {¶ 3} Following his diagnosis with small cell lung cancer, Kilbane filed suit against Conrail alleging that Conrail provided an unsafe work environment that contained asbestos which he inhaled causing his lung cancer.
 {¶ 4} After a trial, including medical experts on both sides, the jury found Conrail negligent for providing an unsafe work environment; however, they found the primary cause of Kilbane's small cell lung cancer to be his years of heavy smoking.
 {¶ 5} It is from that decision, and several rulings by the trial court regarding the admissibility of certain testimony, that Kilbane appeals, advancing three assignments of error. Because of the connection of these assignments of error, we will address them jointly. The three assignments of error are as follows:
 {¶ 6} "I. The trial court erred in allowing Defendants' expert to testify regarding studies which did not comply with Ohio Rule of Evidence 702(c)."
 {¶ 7} "II. The trial court erred in permitting the testimony of Defendants' expert regarding the results of out of court experiments, as the conditions under which the experiments were conducted were not substantially similar to the Plaintiff's work exposure."
 {¶ 8} "III. The trial court erred to the prejudice of the plaintiff by admitting into evidence inadmissible hearsay testimony."
 {¶ 9} The admission or exclusion of evidence is within the broad discretion of the trial court. State v. Allen (1995), 73 Ohio St.3d 626,633. The trial court's ruling will not be reversed on appeal absent a clear abuse of discretion that materially prejudices the defendant. Statev. Kniep (1993), 87 Ohio App.3d 681, 685. The term "an abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore, 5 Ohio St.3d 217, 219.
 {¶ 10} The Ohio Rules of Evidence has no learned treatise exception to the hearsay rule. Evid.R. 803. Thus, medical books or treatises are not admissible as evidence to prove the truth of the statements contained therein. Moreover, a learned treatise may not be admitted into evidence and a witness may not quote language from the treatise or make reference to its title during direct examination. Evid.R. 702 and 706; see, also,Piotrowski v. Corey Hosp. (1961), 172 Ohio St. 61, syllabus.
 {¶ 11} In addition to the hearsay problem, learned treatises are not admissible because the opinions or conclusions contained therein are unverifiable, the technical language may not be understood by most jurors, the opinions or conclusions would be admitted into evidence without an oath of truthfulness, and the opposing party would be unable to cross-examine the person who gave the opinion or conclusion. State v.Malroit (Nov. 8, 2000), Medina App. No. 3034-M.
 {¶ 12} While learned treatises may not be admitted as evidence or relied on for the truth of the opinions stated therein, experts have been permitted to refer to literature generally as forming part of the basis for their opinion. See Gartner v. Hemmer, Hamilton App. No. C-010216, 2002-Ohio-2040. We recognize that no one becomes an expert without research, education, training, and experience and that an expert is entitled to rely on this background in forming his opinion. However, there is a distinction between reference to literature as being part of the collective basis for an expert's opinion and reference to literature as substantive evidence.
 {¶ 13} Over Kilbane's objection, Conrail's industrial hygiene expert, Larry Liukonen ("Liukonen"), was permitted to testify as to the results of three different studies that were not admitted in evidence. The first study referenced by Liukonen measured the level of asbestos emitted near cabooses by a train's brakes when braking on a downhill slope. The second study was identified by Leukonen as a "U.S. Government study that looked at the same issue that I did." The third study dealt with the release of asbestos from brake shoes during their removal and re-installation.
 {¶ 14} Kilbane argues that Conrail used this last study to analogize the level of asbestos exposure Kilbane suffered changing brake shoes during his career at Conrail. Liukonen's testimony regarding this study mentioned a permissible exposure limit ("PEL") for asbestos of 0.03 fibers per cc (cubic centimeter). That 0.03 cc standard was mentioned three times on a single page of what turned out to be several hundred transcript pages of Liukonen's expert testimony. A careful reading of his testimony reveals that these references are to the OSHA standards and their change over time and not an implication as to Kilbane's level of exposure.
 {¶ 15} The first mention by Liukonen of OSHA standards is within 20 pages of the beginning of his testimony. When asked what happened to the OSHA standards for the determination of unsafe levels of asbestos fibers over time, Liukonen replies, "It's dropped significantly." Several questions later, Liukonen discusses the gradual reduction in this standard or PEL for asbestos fiber over an eight-hour day. "When I started working the permissible exposure limit, or PEL, for asbestos was five fibers per cc in 1972. 1976 it was reduced to two fibers per cc. [In 1984] it went to point 2. And [in 1996 it was] reduced again to 0.1 fibers per cc, which is where it is today."
 {¶ 16} Following this discussion of the gradual reduction of standards and other issues not relevant to this appeal, Liukonen offered his opinion as to Conrail's negligence. "My opinion is that from railroad brake shoes there is absolutely insignificant release, if any at all, release of asbestos fibers from being around these composition brake shoes." This opinion on the ultimate issue of Conrail's negligence is offered prior to any discussion regarding the studies of which Kilbane complains.
 {¶ 17} As to the mentioning of the studies reflecting a 0.03 cc level, the transcript reveals that Liukonen is again discussing the changing standards for the PEL over time. The only page where the 0.03 cc level is mentioned is page 1085 of the transcript, which provides:
"A. They found a single fiber, which they considered to be asbestos.Today we would say that's nondetectable. Using the method at the timethey calculated that to be 0.03 fibers per cc.
 When you say `today we would consider that to be nondetectable,' whatdo you mean by that?
 Studies have shown that when — method is too imprecise atthose low levels to give us an accurate — overestimates theconcentration. So today we would say it's nondetectable samples.In those days we counted those samples.
 And the results of that study from changing brake shoes was —the number again?
 0.03.
 0.03?
 Per cc.
 Q And even by today's standard what is today's OSHA permissibleexposure level?
 Today's standard is 0.1?
 And how does this compare the results from changing brake shoes totoday's standard?
 Well, it's at the least — the standard is at least three timeshigher than the exposure that was there. But the standard is based on aneight hour day, so actually it's higher than that because you don't dothis sort the operation all day because — so you will reduce.
 So the exposure that they found were how much below the OSHA PEL?
 At least three times below."
 {¶ 18} A review of this testimony reflects Liukonen did not merely refer to the studies generally as forming the basis for his opinion, but, rather, he referenced results for exposure level from changing brake shoes as .03 per cc. Since the literature was referenced as substantive evidence and for the truth of the matter asserted, it was inadmissible hearsay. Nevertheless, the erroneous admission of this testimony does not justify reversal of an otherwise valid adjudication where substantial rights of the complaining party are not affected or the court's action is not inconsistent with substantial justice. O'Brien v. Angley (1980),63 Ohio St.2d 159, 164. To determine whether substantial justice has been done, we must not only weigh the prejudicial effect of the error, but also, we must determine whether if the error had not occurred, the trier of fact would probably have made the same decision. Id. at 164-165;Hallworth v. Republic Steel (1950), 153 Ohio St. 349, at paragraph three of the syllabus.
 {¶ 19} The jury's decision in this matter considered whether Conrail was negligent and, if so, whether that negligence, or some other cause, resulted in Kilbane's small cell lung cancer. Kilbane had the burden of proving both steps in that analysis.
 {¶ 20} The parties' respective experts presented opinions in stark opposition to each other. Kilbane's expert testified that Conrail provided an unsafe working environment and, by implication, was negligent, as a result of the asbestos he speculated must have been in the air during the years of Kilbane's employment. Conrail's expert, Liukonen, testified that Kilbane's exposure to asbestos was "insignificant" and, by implication, Conrail was not negligent. The jury's verdict determined that Conrailwas negligent in providing an unsafe work environment for Kilbane. There is no more clear a rejection of Liukonen's testimony than that portion of the verdict.
 {¶ 21} Even though the admission of Liukonen's testimony regarding these studies was error, we find that if the error had not occurred, the trier of fact would probably have made the same decision. Hallworth,
supra. Indeed, Liukonen's testimony, even with the impermissibly admitted portions regarding the studies, was unpersuasive to the jury on the issue of Conrail's negligence.
 {¶ 22} Conrail presented another expert, Dr. John Craighead, whose testimony was unopposed by a similar plaintiff's expert. Dr. Craighead testified as to the cause of Kilbane's particular form of cancer.
 {¶ 23} "Small cell carcinoma makes up * * * about 40 percent of the cancers that occur in the lung. * * * [A]lmost all of it, over 98 percent, have a history of smoking. And all of the evidence from clinical sources and epidemiological sources indicate that this is a cancer specifically caused by cigarette smoking * * *."
 {¶ 24} He later offered his expert opinion as to the cause of Kilbane's small cell lung cancer. "I think this was caused by his 30 years of smoking." The trier of fact, although finding Conrail was negligent in providing Kilbane an unsafe work environment, apparently accepted this testimony and found Conrail was not liable for causing Kilbane's lung cancer. We cannot say the jury's determination was affected by the claimed error.
 {¶ 25} Kilbane's second assignment of error argues that Liukonen's testimony (regarding experiments contained in the hearsay studies discussed in his first assignment of error) should have been excluded by the trial court. Consistent with our analysis as to the first assignment of error, we find the admission of the testimony regarding experiments from within these studies to be harmless error. Finally, Kilbane's third assignment of error argues that the trial court erred by permitting Liukonen to quote from the hearsay studies. Consistent with our analysis as to the first two assignments of error, we find the admission of the testimony in which Liukonen quoted from hearsay studies to be harmless error. Kilbane's three assignments of error are overruled.
 {¶ 26} The judgment is affirmed.
Judgment affirmed.
FRANK D. CELEBREZZE, JR., P.J., and DIANE KARPINSKI, J., concur.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.