JOURNAL ENTRY AND OPINION
Plaintiff, Gwladys Thomas ("the patient"), appeals the trial court's evidentiary rulings in her suit against defendant, the Cleveland Clinic Foundation ("CCF"). The seventy-three-year-old patient was at CCF for back surgery. She had had prior spinal fusion and needed replacement of the hardware in her spine.
The anesthesia team consisted of Dr. Lozada, an anesthesiologist, and Sonia Moore, a Certified Registered Nurse Anesthetist ("nurse"). Because the patient had a history of coronary artery disease and asthma, and because the surgery she was to undergo presented a higher than usual risk of bleeding, the anesthesia team inserted a CVP line in preparation for surgery. A CVP is a central form of intravenous line which is actually threaded through the largest vein of the body into the heart. It permits the administration of stronger doses of medicines and it allows the anesthesia team to monitor important vascular pressures for information concerning the patient's condition. Without the CVP line, this information would not be available to the team.
As they were inserting the CVP line, the anesthesia team encountered a complication which resulted in the perforation of the patient's carotid artery. This complication is potentially life-threatening, and a vascular surgeon immediately intervened and repaired the perforated carotid artery. Several weeks later the patient had the spinal surgery, which was performed without incident.
The patient sued CCF for malpractice for the perforation of her carotid artery. She claimed damages for pain, suffering, mental anguish, shortened life expectancy, loss of enjoyment and quality of life, and past and future medical, hospital and long term care expenses for her injuries. She claimed great emotional distress from the resulting "unsightly scar" on her neck. Finally, because she claimed that the anesthesia team either lost or destroyed its record of the procedure which caused her carotid injury, she filed a claim for spoliation of evidence.
After a jury trial, CCF was found not negligent and the patient timely appealed, stating four assignments of error. The first says:
"I. THE TRIAL COURT ERRED IN GRANTING THE CLEVELAND CLINIC'S MOTIONS FOR A DIRECTED VERDICT ON PLAINTIFF-APPELLANT'S CLAIM CONCERNING THE MEDICAL RECORDS AND LOSS, SPOLIATION AND DESTRUCTION OF SAME AND BY FAILING TO REQUIRE THE JURY TO MAKE FINDINGS REGARDING ALL OF THE ELEMENTS OF SPOLIATION WHEN THERE WAS AFFIRMATIVE EVIDENCE SHOWING THAT NO DOCUMENT OF COMPLICATION CAN BE FOUND IN APPELLANT'S CLEVELAND CLINIC MEDICAL RECORD."
At the close of the patient's evidence, CCF moved for directed verdict on the issue of spoliation of evidence. The trial court granted this motion and the patient appealed this ruling, arguing that the missing progress note written by Dr. Lozada was sufficient evidence of spoliation of the record.
A motion for directed verdict is controlled by Civ.R. 50(A)(4), which states in pertinent part:
"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
An appellate court performs a de novo review of a ruling for directed verdict. As with summary judgment, the reviewing court construes the evidence "most strongly in favor of the nonmoving party and, after so doing, determines whether reasonable minds could only reach a conclusion which is against the nonmoving party." Washington v. Strowder's Funeral Chapel, Cuyahoga App. No. 72585, 1999 Ohio App. LEXIS 1844, at *26-27, citing TitaniumIndustries v. S.E.A., Inc. (1997), 118 Ohio App.3d 39. Rather than weighing the evidence or testing the credibility of witnesses, the court reviewing a directed verdict instead assumes that all the evidence presented is true and gives the benefit of the doubt to all reasonable inferences drawn from the evidence presented. Id., citing Becker v. Lake Cty. Mem. Hosp. West
(1990), 53 Ohio St.3d 202, 206. The appellate court tests the legal sufficiency of the evidence, not its weight or credibility.Medpartners v. Calfee, Halter, Griswold LLP (2000),140 Ohio App.3d 612, 615-616. This court addresses then, an issue of law, not of fact. Id.
The legal elements necessary to prove spoliation of evidence are:
"* * * (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts * * *."
Smith v. Howard Johnson Co. (1993), 67 Ohio St.3d 28, 29. All the elements must be present in order to prove this cause of action.
In the case at bar, construing the evidence most favorably to the patient results in conceding the first two elements in favor of the patient. Although she presented no evidence that CCF and its anesthesia team knew of pending litigation following the injury to her carotid artery, in light of today's litigious society, we can construe the evidence to support that the anesthesia team knew or should have known that a lawsuit was likely.
The third element, however, willful destruction of the evidence in order to disrupt the plaintiff's case, is not supported by any evidence in the record. Dr. Lozada testified that he was certain that he had written a progress note describing the incident of the puncture of the carotid artery during the attempted CVP insertion and he had put the progress note with the rest of the loose papers which constituted the chart at that time. He testified that he did not know what happened to the progress note after he placed it with the rest of the chart. Additionally, the patient has failed to show that the progress note was lost or destroyed for the purpose of disrupting her case. Neither member of the anesthesia team had any knowledge of what had happened to the note. The patient has presented no evidence to show that the absence of the progress note in the chart was willful.
The patient also failed to provide evidence supporting the fourth element needed to prove spoliation of evidence: a disruption of plaintiff's case. At no time did anyone connected with CCF deny that the incident had occurred or that it was a complication of the insertion of the CVP line. Although the patient's counsel argued at trial that the loss of the progress note prevented him from determining exactly what action during the attempted insertion of the CVP line caused the two millimeter puncture in both sides of the carotid, patient's counsel never established that the missing note contained this information. Dr. Lozada, the author of the missing progress note, testified that he did not know which specific action caused the puncture and that he did not consider that pertinent. No one at CCF denied anything about the complication.
Finally, the patient presented no evidence to show her case was damaged by the loss of the progress note. The issue in question was whether the puncture to the patient's carotid constituted malpractice. Patient's counsel never established precisely how not knowing what specific action caused the puncture damaged his case. Patient's counsel, therefore, failed to show that the loss of the progress note interfered with the patient's attempt to prove malpractice.
The trial court did not err in granting a directed verdict to CCF on the issue of spoliation of evidence. Accordingly, this assignment of error lacks merit.
For her second assignment of error, the patient states:
"II. THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFF WHEN IT FAILED TO ALLOW APPELLANT TO EXAMINE/CROSS-EXAMINE KEY WITNESSES WITH A LEARNED TREATISE WHEN THE FOUNDATION FOR THE TREATISE HAD ALREADY BEEN LAID PURSUANT TO EVIDENCE RULE 706."
At trial, patient's counsel attempted to introduce an article from the New England Journal of Medicine while he was examining his own expert. Counsel for CCF objected and the trial court sustained the objection, blocking introduction of the article on direct. The patient argues that she was materially prejudiced by this allegedly erroneous ruling.
"The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." Peters v.Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299. The term abuse of discretion has a very limited and specific meaning in the law: "In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v.Fairview General Hospital (1996), 75 Ohio St.3d 254, 265.
In addition to meeting that stringent requirement in finding an abuse of discretion, the reviewing court is further limited in reversing a trial court's evidentiary ruling: "Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66.
With this standard in mind, we address the claimed errors in discovery rulings cited by the patient. She argues that the trial court erred, first, in barring her questions concerning the article from the New England Journal of Medicine.
On direct examination, plaintiff's expert, Dr. Tirgan, was asked the following questions:
"Q: Doctor, are you familiar with an article that was published in the New England Journal of Medicine on March 20th of 2003?
Ms. Reid: Objection, your Honor.
The Court: Come on up to the bench. * * *
The Court: The objection is sustained. * * *
Q: As most respectable journal, do you know of any other respectable journal in all the medical area over and above New England Journal of Medicine?
Ms. Reid: Objection.
The Court: The objection is sustained.
* * *
Q: And you've been practicing medicine for what, 20 years, 18 years? How many times you have heard of similar type of complication which the common carotid artery has been-a hole is punched through, two millimeter on the [sic] both sides which required repair of common carotid artery?
A: No, I have never heard of that but again, my specialty doesn't lend itself to know all these details. Because of this case I did a medical research. I searched the surgical reviews —
Ms. Reid: Objection, your Honor.
The Court: The objection is sustained.
* * *
Q: And the complication occurred from that placement or misplacement was and is not one of those known-common known complications which is published?
A: Absolutely not. I did the review of this issue in terms of safety and doing safe-doing this procedure safely. In New England Journal of Medicine —
Ms. Reid: Objection.
The Court: The objection's sustained. He'll ask you another question."
Tr. 201, 206, 228, 243.
As this court recently recognized:
"The Ohio Rules of Evidence has no learned treatise exception to the hearsay rule. Evid.R. 803. Thus, medical books or treatises are not admissible as evidence to prove the truth of the statements contained therein. Moreover, a learned treatise may not be admitted into evidence and a witness may not quote language from the treatise or make reference to its title duringdirect examination. Evid.R. 702 and 706; see, also, Piotrowskiv. Corey Hosp. (1961), 172 Ohio St. 61, 173 N.E.2d 355, syllabus. (Emphasis added.)"
Kilbane v. Consolidated Rail Corp., Cuyahoga App. No. 82397,2004-Ohio-134, ¶ 10.
In Ohio, the use of learned treatises, which have been "properly identified, authenticated, and recognized as standard authority, are not admissible in evidence to prove the truth of the matter asserted therein. Rather, `learned treatises are considered hearsay, may not be used as substantive evidence, and are specifically limited to impeachment purposes only.'"Freshwater v. Scheidt, 86 Ohio St.3d 260, 267, 1999-Ohio-161,714 N.E.2d 891, citing Hallworth v. Republic Steel Corp.
(1950), 153 Ohio St. 349, 41 Ohio Op. 341, 91 N.E.2d 690, paragraph two of the syllabus.
Evid.R. 706 limits the admission of learned treatises (to the following conditions) as follows:
"Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
(A) Relied upon by an expert witness in reaching an opinion;
(B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.
If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits. (Emphasis added.)"
Even though Ohio Evidence Rules[1] permit a plaintiff's expert to rely on an article from a learned treatise, the only time any language from that article may be admitted is during cross-examination and then only to impeach the expert who relied on the article,[2] here, Dr. Tirgan. Accordingly, we reject the patient's argument that she should have been allowed to impeach Dr. Lozada with the article Dr. Tirgan deemed reliable and authoritative. There is no evidence that Dr. Lozada ever relied on the subject article in forming his opinions in this case. Moreover, the patient fails to cite to the portion of the transcript in which she claims the court did not permit her to cross-examine any member of the anesthesia team with the article. This court may disregard any argument in which the appellant fails to "identify in the record the error on which the assignment of error is based * * *." App.R. 12(A)(1)(c)(2).
The patient also claims that the trial court erred in barring her from questioning her expert on redirect concerning five abstracts CCF used to impeach his testimony. The patient's expert had claimed that the anatomy of the neck is identical in every person and that the anesthesia team erred in claiming that her anomalous anatomy could have resulted in the needle puncturing patient's carotid artery instead of the vein it was intended to enter. In impeaching the patient's expert, CCF questioned the patient's expert concerning five abstracts, or summaries, of articles from various medical journals which discussed anomalies in the anatomy of the neck.
The patient cites Evid.R. 106 to support her argument that she should have been permitted to question the expert about these abstracts on redirect. Evid.R. 106 states:
"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at thattime to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it. (Emphasis added)."
The patient argues that "[t]he trial court's refusal to allow the [plaintiff's expert] witness to explain the abstracts that were introduced by [CCF] was in complete contradiction to the purpose of Evidence Rule 106." Appellant's brief at 22. She misconstrues the purpose of this evidence rule as well as how it must be implemented. She cites State v. Holmes (1991),77 Ohio App.3d 582, for "the Rule of Completeness." This rule, as theHolmes court explained, states that if one party introduces a portion of a document, the opposing party may request that the court allow the entire document to be introduced. Id. at 584. TheHolmes court further explained, however, that "Evid.R. 106 is a rule of timing * * *." Id. The rule requires that the opposing party must immediately seek to have the entire document introduced into evidence and must show that the remaining portions of the document are relevant. Id. at 585.
In the case at bar, because the patient never demonstrated or even requested an opportunity to show that the remaining portions of the documents were relevant, we reject her argument.
Further, we note that while the patient makes other arguments about the abstracts,[3] we cannot and do not reach the merits of these arguments because we do not have the abstracts available for our review. The patient never proffered them.
Finally, the patient complains that the trial court "permitted [the CRNA] to demonstrate CVP line placement on a manikin that was never shown to appellant prior to its introduction in open court." Appellant's brief at 22. Again, she fails to direct us to the portion of the transcript in which this alleged breach of discovery occurred. As noted above, we need not address this issue. App.R. 12, supra.
The patient has failed to show that the trial court erred in the evidentiary rulings to which she objects. Accordingly, this assignment of error is overruled.
For her third assignment of error, the patient states:
"III. THE TRIAL COURT ERRED IN FAILING TO ADMIT [SIC] EVIDENCE PLAINTIFF-APPELLANT [sic] TRIAL EXHIBITS THAT WERE USED AND ONE [SIC] WAS MARKED BY THE WITNESS DURING TRIAL."
The patient argues that the trial court erred when it refused to admit into evidence a medical drawing from the article in the New England Journal of Medicine. She claims that this drawing, and the markings she was not permitted to ask the witness to make on it, were crucial to proving that the nurse inserted the needle into the patient's neck in the wrong direction and thereby caused the injury.
First, the patient has failed to cite where in the record the trial court prevented the nurse from making a mark on the medical drawing. Second, the patient never attempted to proffer the drawing in court. As the Ohio Supreme Court has previously held: "Because the record indicates that the appellant failed to proffer any evidence allegedly excluded by the trial court, [the party] has waived his right to argue this evidentiary issue on appeal." Garrett v. City of Sandusky, 68 Ohio St.3d 139, 141,1994-Ohio-485. Although the drawing is not properly in evidence, she attached it to her appellate brief. This supplementation of the record, however, is not permissible.
Accordingly, this assignment of error is overruled.
For her fourth assignment of error, the patient states:
"IV. THE TRIAL COURT ERRED IN PERMITTING DR. LOZADA AND MRS. SONIA MOORE TO TESTIFY AS EXPERTS ON THEIR OWN BEHALF WHEN THEY DID NOT COMPLY WITH CUYAHOGA COUNTY COMMON PLEAS LOCAL RULE 21.1 AND NEVER FILED EXPERT REPORTS."
First, the patient argues that the trial court erred in allowing the attending anesthesiologist, Dr. Lozada, to testify as an expert in violation of Loc.R. 21.1.
Since patient's counsel failed to object when Dr. Lozada gave his opinion whether the nurse met the standard of care, we review this assigned error under a plain error standard. "A party who fails to object at trial waives error on appeal relative to that testimony unless there was plain error. State v. Ballew,76 Ohio St.3d 244, 251, 1996-Ohio-81, 667 N.E.2d 369. `Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'"Scatamacchio v. W. Reserve Care Sys., 161 Ohio App.3d 230,2005-Ohio-2690, at ¶ 68, 829 N.E.2d 1247.
The patient argues that because Dr. Lozada did not submit a written expert report before trial she did not know that he was going to testify as an expert and give his expert opinion about the standard of care for inserting a CVP line.
"The determination of whether or not a medical witness is competent to testify lies within the sound discretion of the trial court. The qualifications of an expert are a matter for determination by the court on the facts, and rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion." Campbell v.Warren Gen. Hosp. (1994), 105 Ohio App.3d 417, 421,664 N.E.2d 542, quoting Akron v. Pub. Util. Comm. (1967),5 Ohio St.2d 237, 242, 215 N.E.2d 366, 34 Ohio Op. 2d 467.
Under Evid.R. 601(D),
"[e]very person is competent to be a witness except:
(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school. This division shall not prohibit othermedical professionals who otherwise are competent to testifyunder these rules from giving expert testimony on the appropriatestandard of care in their own profession in any claim asserted in any civil action against a physician, podiatrist, medical professional, or hospital arising out of the diagnosis, care, or treatment of any person. (Emphasis added.)"
Under the rule, there is no prohibition against treating physicians' providing expert testimony about the applicable standard of care in which they provided their medical expertise. See, Crosswhite v. Desai (1989), 64 Ohio App.3d 170, 179,580 N.E.2d 1119, (Doctor met the competency requirements of Evid.R. 601(D) because he was the treating physician for the problem at issue).
In the case at bar, Dr. Lozada could properly testify as an expert under Evid.R. 601(D). He not only was the patient's attending anesthesiologist during her surgery, but was also in charge of the nurse who assisted him. We therefore find no error in the trial court's allowing Dr. Lozada to testify as an expert.
The next question is whether Dr. Lozada's expert testimony without a written expert report in advance of trial was proper. Without an expert report from Dr. Lozada before trial, the patient argues, she was prejudiced because she did not know he was going to give expert testimony about the standard of care for inserting a CVP line. We disagree.
The patient cites Loc.R. 21.1(B), which states in pertinent part: "A party may not call a non-party expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel." Loc.R. 21.1(B). The rule continues, however, that "[i]n the event the non-party expert witness is a treating physician, the Court shall have the discretion to determine whether the hospital and or office records of that physician's treatment which have been produced satisfy the requirements of a written report." Loc.R. 21.1(C). During discovery, the patient received the same medical records Dr. Lozada testified from during trial. Those records naturally included the patient's surgical notes, which included details about the CVP procedures followed during the surgery. No one disputes that Dr. Lozada testified from the patient's hospital records. We conclude that these records satisfy the requirement of a written report under Loc.R. 21.1(C) and therefore Dr. Lozada's testimony as an expert was properly admitted.
Moreover, when a party claims that evidence was improperly admitted, as the patient does here, that party "must present evidence of being prejudiced by the admission of the testimony."Williams v. Reynolds Rd. Surgical Ctr., Lucas App. No. L-02-1144, 2004-Ohio-1645, 2004 Ohio App. LEXIS 1450, at *8, citing Reese v. Euclid Cleaning Contrs., Inc. (1995),103 Ohio App.3d 141, 658 N.E.2d 1096. As stated in Williams:
"Whether the testimony results in surprise at trial is a matter left to the sound discretion of the trial court. State v. Diehl
(1981), 67 Ohio St.2d 389, 391, 423 N.E.2d 1112. Without surprise, there is no abuse of discretion. Long v. Isakov
(1989), 58 Ohio App.3d 46, 51, 568 N.E.2d 707. "This court has also found that when a complaining party knows the identity of the other party's expert, the subject of his expertise and the general nature of his testimony, a party cannot complain that they [sic] are ambushed." Kalina v. Sagen (Mar. 25, 1992), 8th Dist. No. 59761, 1992 Ohio App. LEXIS 1598; Cherovsky v. St.Luke's Hosp. (Dec. 14, 1995), 8th Dist. No. 68326, 1995 Ohio App. LEXIS 5530."
From the record before this court, the patient cannot claim surprise or prejudice by Dr. Lozada's trial testimony even though he did not provide a written expert report. The patient always knew both Dr. Lozada and the nurse would be called as trial witnesses. Because patient's counsel had those records well before trial, the patient cannot claim surprise at the subject matter of the doctor's trial testimony. We conclude, therefore, that the outcome of the trial would not have been otherwise had Dr. Lozada submitted an expert report.
The patient further argues that the trial court also erred by allowing the nurse to state she met the standard of care when she inserted the patient's CVP line. First, we note that, unlike the situation with Dr. Lozada's testimony, when the nurse expressed her opinion as to whether she violated the standard of care, the patient objected and her objection was overruled. The patient, therefore, preserved this issue for appeal.
The patient argues that the nurse should not have testified as an expert without first submitting a written expert report. We agree. However, the record establishes that the patient invited this error. Under the invited-error doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced." Hal Artz Lincoln-Mercury, Inc. v. FordMotor Co. (1986), 28 Ohio St.3d 20, 502 N.E.2d 590, paragraph one of the syllabus.
During her case-in-chief, the patient called the nurse as a witness and asked, as on cross-examination, about the general manner in which she was trained to insert a CVP line. At the invitation of patient's counsel, the nurse described each step she routinely would take to insert a CVP line. The nurse admitted that the manner in which she was trained to insert a CVP line may be different elsewhere. She admitted that she could not say whether one way was more correct than another; she explained she could discuss only the way she was trained to do the CVP line placement.
Early in her testimony, the nurse acknowledged that the patient's common carotid artery had been ruptured on both sides of the anterior and posterior walls. When asked how the patient received a hole on both sides of her jugular vein, the nurse stated that she did not know and that she could not explain why it occurred.
The nurse's testimony, as elicited by the patient, amounted to very specific evidence about the manner in which she has done CVP line placements during her career. That was the context of her statement that she "did each adequate check" as she proceeded during the CVP line placement for the patient. Tr. at 76. The nurse repeatedly testified that in her experience a puncture of the carotid artery is a known and common complication of the insertion of a CVP line.
From her testimony as elicited by patient's counsel, we conclude that what the nurse had described about CVP line placements was limited to her own experiences as a nurse. By the time the nurse stated that she met the standard of care in the patient's case, a context had been established that implied she was referring to the standard she was familiar with, not the entire population of nurse anesthetists. CCF counsel continued that same context:
"Q: The procedure you outlined here and showed the jury, is that the procedure you've been trained to do?
A: Yes.
Q: Is that the same procedure you used in all your insertions?
A: Yes."
When she stated on direct examination in CCF's case that she met the standard of care, her testimony did not substantively deviate from the testimony she had already provided to the patient's counsel. She stated merely that as a certified nurse anesthetist she met the standard of care in attempting to insert the patient's CVP line.
Finally, even if the nurse's testimony concerning the standard of care was admitted improperly, the patient has failed to articulate any prejudice resulting from her testimony. Nor does our review of the record reveal any. Moreover, without a specific description of the questions the patient was prevented from asking Dr. Lozada or the nurse, we cannot conclude that the patient suffered prejudice because they based their testimony on the medical records instead of expert reports.
Accordingly, plaintiff's fourth assignment of error is overruled.
Affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Calabrese, Jr., J., concur.
[1] Evid.R. 702 states in pertinent part:
A witness may testify as an expert if all of the following apply:
(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony
(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
[2] "[I]f an expert witness relies upon published medical literature in forming his or her opinion, or the expert provides testimony sufficient to establish that the literature is reliable authority, or the literature is part of the expert's own publication, statements contained in the literature can be used for purposes of impeachment." Freshwater, supra, at 269.
[3] The patient argues she could have used these abstracts to rehabilitate her expert.